Deaderick, J.,
delivered the opinion of the Court.
*380 The questions which arise upon the record in these several causes may be stated and determined without incumbering this opinion with a full recital of the voluminous pleadings, or facts disclosed therein.
Newton. McClure, the executor of Mary A. Harris, the deceased wife of P. N. Harris, filed his bill in the Chancery Court at Franklin, for the construction of her will, made in the execution of a power conferred on her by her deceased father’s will, in which he devised certain real and personal property to her sole and separate use. A, further object of said bill of the executor, was to have the Court declare void, as against his testatrix, certain notes executed by her, as surety for her husband, executed for a tract of land purchased by him of Zachary Allen, the intestate of defendant Winstead.
To this bill Harris answered, and filed his original bill in the nature of a cross-bill, making defendants thereto McClure, executor; Winstead, administrator; the widow and children of said Allen, and his sisters and their husbands; and Holt and Owen, to whom Harris sold the land purchased of Allen.
Harris in his bill alleges that he bought of Zachary Allen in his lifetime, a tract of land of ninety acres in Williamson county for $4,500, of which $1,000 were paid at the time of the purchase^ and one note for $2,000, due January 1, 1863, and one for $1,500, due January 1, 1864, both bearing interest from date, with his wife as surety thereon, were given for the balance of the purchase money, and a bond for the title executed at the time, by which Allen was bound *381 to make Mm “a good and sufficient title in fee simple with general -warranty,” to said tract of land, when the - last payment should be made; and that he has paid in all upon said land $3,785.
After Harris purchased the land, he sold it to Holt and Owen, and put them in possession, although no written contract of sale, so far as disclosed in this record, was entered into with them. In part payment, Holt and Owen sold to Harris, without any written conveyance, the Brentwood property in said county at $3,000, and gave him possession of it, paid $600 in cash, and executed their note for $900, the balance of the price agreed upon.
This $900 note was assigned by Harris to Allen, before due, and constitutes part of the sum which Harris claims to have paid Allen. Harris alleges that the administrator of Allen is unable to make him a title to the land because he, Allen, had only an interest in remainder in it; his mother, who was alive at the time of the filing of the bill, having by her husband’s will a life estate in the land and negroes devised to his sons and daughters, and that the land was not to be divided between the sons, nor the ne-groes between the daughters, until after the death of the testator’s widow.
It was further alleged that the land was charged in the hands of the sons, in favor of the daughters, with the difference in the value between the slaves and land at the time for the division and settlement of the estate, and that the slaves were lost by the event of the war, and that the equality provided for *382 in the will must be attained through a sale or division of the land for that purpose, and for these reasons he prays a rescission of the contract. Fly and wife and Pate and wife, the wives being the two sisters of Zachary, to whom the slaves were bequeathed, answer and file their answer as a cross-bill, and claim their lien on the land, but say they are willing that the-contract shall be executed if the fund due from Harris, to the extent of their lien, is secured to them.
Owen and Holt jointly file their answer to the bill of McClure, executor, and also to the bill of Harris, and claim their purchase, and insist upon a specific execution of the contract to them by Harris. But they now, in argument by their, counsel, urge that the sale is void and should be rescinded. It does not satisfactorily appear that there is a contract in writing for the sale of the land to Holt and Owen, and if there is not, either party to the contract may resist and defeat its specific execution.
At the April Term, 1869, a decree was pronounced by the Chancellor, in which it was held, and we think correctly, that Mrs. Harris was not bound upon the notes executed by her husband and herself to Allen, and giving, as we think, a correct construction of the will of Mrs. Harris. The Chancellor further decreed that the bargain between Harris and Zach. Allen for the purchase and sale of the 90 acres of land, can not be enforced; nor can the sale of the Brentwood property; and then the decree recites that the Court declines to pass upon and decide the other questions presented and involved in these cases, or either of them, but *383 reserving all other questions for further decision, directs the Master to report as to what became of the slaves bequeathed by "William Allen to his two daughters, the amount paid by Harris to Allen, and the amount paid by Holt and Owen to Harris, and what sums, and by whom, were received for rents of the 90 acres of land and for the Brentwood property.
After the rendition of this decree, Elizabeth Allen, widow of Zach. Allen, deceased, filed her bill, setting out that Wm, Allen, deceased, had devised his tract of land to his wife during life, with remainder to his two sons, and also bequeathed his negroes to his wife during her life, with remainder to his two daughters; that Zachary bought, in 1853, from his mother, her life estate in the land, and took her deed for the same, and afterwards sold the 90 acres set apart to him in the will to Pryor N. Harris.
That Zachary Allen, her husband, departed this life in November, 1862, intestate; that the sale to Harris had been rescinded, and that at the death of her husband he was the owner of the 90 acre tract of land encumbered with a lien in favor of the daughters, which could not be enforced until the falling in of the life estate, and praying that dower be allowed and set apart to her out of the 90 acre tract of land.
At the October Term, 1869, the Master reported upon the several matters referred to him by the previous decree. The report was confirmed as to the account of McClure, executor; but upon exceptions taken to the report to the other matters, it was continued to the next term.
*384 At the October Term, 1871, the cause came on for hearing upon the report of the Master. Certain exceptions taken by Harris were allowed, and the amount paid by him upon the land ascertained and declared in the decree to be $3,760, exclusive of interest; that the two daughters of Wm. Allen, deceased, have a lien upon the land sold to Harris for $550, the amount due them, with the interest thereon from the death of the widow of Wm. Allen, deceased, and that • this lien is superior to the lien of Harris for the repayment of the purchase-money paid by him; but that Harris’s lien and claim to be reimbursed the money paid by him toward the land is superior to the right of Zach. Allen’s widow to dower, and that said widow is entitled to be endowed only out of so much as may remain after satisfying said two liens.
The land was ordered to be sold to pay the liens, and a further account of rents ordered. The sale to Holt and Owen was also rescinded, and proper accounts ordered to be taken, and the Master was ordered to report to the next term.
From this decree Winstead, the administrator of Zach. Allen, and Elizabeth Allen, his widow, appealed to this Court.
It is insisted that the decree of the October Term, 1869, was final as to the rights of Winstead, administrator, and ought to have been appealed from, and that no appeal having been taken from it, it cannot now be reviewed.
It cannot be said that it settled fully the rights of any of the parties, while it is manifest from the *385 express terms of the decree itself, tbat there were other questions than those determined reserved for other adjudication. And even if all the questions as to Win-stead, administrator, had been determined by the decree at the October Term, 1869, or in the language of the statute, his rights were settled by that decree, while the rights of others were unadjudieated, he might, as a matter of favor, and by leave of the Chancellor, have appealed, but he was not bound to do so. We are therefore of the opinion that none of the parties were precluded from appealing from the decree of the October Term, 1871, by reason of anything determined by the decree of the October Term, 1869.
The next question is, has Harris the right to insist upon and enforce the rescission of this contract?
Applications for specific performance or rescission of contracts are not matter of absolute right in either party, but of sound discretion in the Court; and will be enforced or denied as the justice and equity of the case may require.
If the contract is executory, and the vendor is not able to make a good title to the land sold, the vendee will not be compelled to pay his money and accept a conveyance. 8 Hum., 516; 1 Hum., 325, and 5 Sneed, 70.
These cases are founded upon the obviously equitable principle, that one party to a contract shall not be required to perform his part of it, when it is manifest that the other party is unable to fulfill his part, the one obligation being the consideration of the other.
The party applying to the Court for relief must *386 show that it would be inequitable to require him to perform his part of the contract, by reason of fraud, or inability of the other contracting party to make a good title to the land.
The deed to Zachary Allen from his mother, we are of opinion, did convey her whole interest in the ninety acres of land to him, and that at the time of the sale to Harris, Zach. Allen had a good title in fee simple to the tract sold, which was subject, however, to the payment of the $550 to his sisters; that this sum constituted a charge or lien upon the land, but that it gave no estate in the land.
Harris knew that Zachary had derived title to this land from the will of his father and the .purchase from his mother. We are satisfied that no fraud was perpetrated in the sale of the land to Harris. And in the ease of an executory contract, there being no fraud in the sale, if the vendor can make a good title before final decree, the vendee will be required to accept it. 2 Heis., 545.
Harris's bill, and the account taken, show that the balance of the purchase money due from him to Allen for the land, is about double the amount of the lien upon it. And the parties holding the lien agree that it may be discharged upon receipt of the amount due them, and the title then vested in Harris.
Winstead, the administrator, also assents to this, and the terms of the contract, as evidenced by a copy of the title bond on file, are, that upon Harris’s making the last payment, Allen shall make, or cause to be made, to him, a title in fee simple, etc.
*387 We are of opinion that as all the parties are before the Court, Harris can get, in exact compliance with the terms of his contract, “a good and sufficient title in fee simple, upon his paying for the land.” Allen was not bound to make title before the purchase money was paid, and his representative may require by the terms of the contract, that payment of the price shall be made' at least simultaneously with the act of investing title in the purchaser. This can be done by the decree of this Court, and it seems to us as more equitable and consonant with the contract of the parties .and their rights under it, than to direct a rescission. Harris will thus get the title to the land he contracted for, and at the time he had the right to demand title.
Possession was delivered to him in 1861, at the time of his purchase, and upon his sale to Holt and Owen in 1862, was delivered to them. They will be held to their election to take the land, as set out in their answers, and Harris will be allowed at his election to rescind or execute the contract, within a reasonable period to be designated by the Chancellor. So much of the decree of the Chancellor as allows the two exceptions of Harris to the Master’s report and declares the amount of the payments made by Harris on the land, is affirmed, and the portion rescinding the sale to Harris is reversed.
But if Harris should elect to rescind the contract with Holt and Owen, then the credit allowed him in the account for the $900 note of Holt and Owen assigned to Allen, shall be added to the $600 paid *388 Holt and Owen, making $1,500, with interest to be added, to be accounted for by Harris to Holt and Owen, in addition to the restitution of the Brentwood property, besides such rents and profits, if any, of the Brentwood property, as may be justly chargeable to Harris, to be ascertained upon taking the account ordered by the Chancellor, and a lien will be declared in their favor on the Allen tract, for' the satisfaction of the amount ascertained to be due them, subject- to the prior lien in favor of Allen.
But if Harris elect to execute the contract with Holt and Owen, then the Chancellor will make such decree as may indemnify them out of the Brentwood property for the balance due to Allen’s estate, of the purchase money of the land, to be ascertained by the Master under the directions of the Chancellor. The Chancellor will also direct an account as to the rents, if any, due for the Allen tract of ninety acres, and make such decree as may settle the rights of the parties.
So much of the decree of the Chancellor as dismisses the bill of Elizabeth Allen, and disallows her claim for dower in the ninety acre tract of land, is affirmed. And this cause will be remanded to the Chancery Court, to the end that the necessary accounts may be taken, and such proceedings had as are necessary to the settlement of the rights of the parties, in accordance with the principles settled in this opinion.
The bill of Elizabeth Allen will be dismissed, and she will pay the costs incident to her bill for dower; and Harris will pay the residue of the costs in this Court.