CHADWELL and McLAUGHLIN *v.* A. J. WINSTON, Executrix, and others.

## April Term, 1876.

SPECIFIC EXECUTION OF CONTRACT FOR THE SALE OF LAND. — Time is not usually deemed in equity to be of the essence of a contract for the sale of land, and if the vendee has been in possession and a title can be made, and there are reciprocal covenants and mutual forbearance, it is of course to execute the contract at the instance of either party, although the deed and notes were, by the contract, to have been executed "in a short time," the delay being explained.

RESCISSION — SALE OF LAND AND PERSONALTY TOGETHER. — A contract for the sale of an undivided interest in land and the furniture of a hotel thereon, at a lumping price, on time, the deed and notes to be executed "in a short time," will not be rescinded as to the land, at the instance of the representatives of the vendee, when it appears that the vendee went into possession at once, and formed and carried on for several years a partnership with the vendors and other co-owners of the property in "conducting the premises as a watering-place," the vendors being able to make a good title to the land sold, and the delay in executing the deed and the notes being explained.

*John A. Campbell*, for complainants.
*Harry Harrison*, for defendants.

THE CHANCELLOR : — Bill filed January 9, 1876, against the executrix and heirs of John D. Winston, deceased, to enforce the specific execution of a contract for the sale of land, made between complainants and said Winston on March 1, 1871. The contract was entered into in writing, on the last named date, and was signed by both of the complainants and by the said John D. Winston. By its terms the complainants agreed to sell and convey to Winston, in fee-simple, with general warranty, one undivided eighth interest in certain real estate in Grundy County, Tennessee, known as Bersheba Springs, containing about 500 acres, on which were a hotel and other buildings, and "in all the personal property in any manner belonging to the hotel," the personalty being estimated as worth about $7,000, "or thereabouts, the actual value not being known, and therefore waived." The consideration to be paid by Winston for "the share and interest in said realty, and the personal property connected with it for the purposes of the hotel," is recited to be $2,500, for which he was to execute his four promissory notes, payable in one, two, three, and four years, "to draw interest from date of this memorandum," calling for $625 each, two of the notes to be payable to complainant Chadwell, and two to complainant McLaughlin. A lien was retained on the interest sold until the purchase-money was paid. The closing sentence of the contract is in these words : " A deed or deeds of conveyance is to be executed in a short time, when the notes will be also executed." P. S. Hollins was also a party to this contract, the complainants selling to him, upon the same terms, one undivided eighth share of the same property, real and personal.

On May 1, 1871, the complainants, Winston, Hollins, and S. M. Scott, and Weakley & Warren, who also owned undivided shares of the property, entered into written articles of partnership, under the style of S. M. Scott & Co., for the purpose " of conducting the premises as a watering-

place." These articles commence thus: "The property known as Bersheba Springs, situated in Grundy County, Tennessee, and consisting of about five hundred acres of land, together with all the improvements thereon, is now owned by the undersigned, and in the following proportions, viz. : Thomas Chadwell, one-eighth ; James McLaughlin, one-eighth ; J. D. Winston, one-eighth ; P. S. Hollins, one-eighth ; Weakley & Warren, two-eighths ; S. M. Scott, two-eighths." The articles provided for the opening the place for the accommodation of the public on the 1st of June, 1871, and declared that the parties should share the profits and losses in the proportion of their interests as above. S. M. Scott was authorized to represent the company in the purchase of all furniture, fixtures, supplies, etc., and to carry out " such general improvements as have already been agreed upon," as well as minor improvements which may seem to him necessary, etc. The projection and carrying out of new improvements to the property, and all other matters of general interest to the company, were to be decided upon at meetings, in which all the interests should be represented in person or by proxy. The articles of partnership were signed by each of the co-owners, the said John D. Winston signing with the others.

The Springs were opened as a watering-place by the parties, under the name of S. M. Scott & Co., improvements made, furniture and supplies bought, and expenses incurred as contemplated, and the partnership business extended through the years 1871, 1872, and 1873. During the first two of these years John D. Winston spent the summer months at the Springs as co-owner, and in the practice of his profession, he being a physician. He also resided at the Springs during the summer of 1873, claiming, however, as it seems, to be there only as a physician, and being himself in feeble health. He died in September, 1873.

The contract on which the bill is based being in writing, signed by the parties, containing a sufficient description of

the land and of the consideration and other terms of the bargain, and Winston having gone into possession under it, both of the land and personalty bought, and remained in possession up to his death, and his heirs and personal representatives being still in possession, so far as appears, without let or hindrance by the complainants or any one else, the case seems to be a clear one for specific performance. The burden is on the defendants to show cause to the contrary.

The defendants insist that by the terms of the contract a deed of conveyance was to have been executed by the complainants in a short time, and not having complied with this provision, the complainants are not entitled to a specific performance. The contract does stipulate that " a deed is to be made in a short time, when the notes will be also executed." If the deed is to be made in a short time, so are the notes for the purchase-money. It is a case of reciprocal covenants, constituting mutual conditions to be performed at the same time, leaving it uncertain which party was to do the first act. *Smith* v. *Christmas*, 7 Yerg. 565, 577. At law, neither party could maintain an action on such a contract without showing a performance, or at least a readiness to perform. *Bradford* v. *Gray*, 3 Yerg. 463 ; *Shaw* v. *Wilkins*, 8 Humph. 647. But it is precisely in such cases that the rule of equity is different from that of law. And this, for the reason that the effect of a contract for the sale of land is very different at law and in equity. At law the estate remains that of the vendor, and the money that of the vendee ; while in equity the estate, from the signing of the contract, becomes the real property of the vendee, descends to his heirs, and is devisable by his will. If, now, the vendee is put in possession, and the title bargained for can be had, time is not of the essence of the contract, and it is of course to specifically execute the contract at the instance of either party. *Seton* v. *Slade*, 7 Ves. 273 ; *Bryson* v. *Peak*, 8 Ired. Eq. 310 ; *Blackmore* v. *Shelby*, 8

Humph. 439. *A fortiori,* where, in the case of reciprocal covenants, there has been mutual forbearance or mutual laches. *Craig* v. *Leiper,* 2 Yerg. 193 ; *Pincke* v. *Curteis,* 4 Bro. C. C. 332 ; *Jones* v. *Price,* 3 Anst. 925. Time is not generally deemed, in equity, to be of the essence of a contract, unless the parties have so expressly treated it, or it necessarily follows from the nature and circumstances of the contract. *Frost* v. *Brunson,* 6 Yerg. 36 ; 1 Story's Eq. Jur., sec. 776, and cases cited ; *Roberts* v. *Berry,* 3 De G. M. & G. 284 ; *Tilley* v. *Thomas,* L. R. 3 Ch. App. 61. In the ordinary case of the purchase of an estate, and the fixing of a particular day for the completion of the title, the court seems to have considered that, the general object being only the sale of the estate for a given sum, the particular day named is merely formal ; and the stipulation means, in truth, that the purchase shall be completed within a reasonable time, regard being had to all the circumstances of the case. *Gibson* v. *Patterson,* 1 Atk. 12, as explained in *Lloyd* v. *Collett,* 4 Bro. C. C. 469, and 4 Ves. 689, note ; *Hipwell* v. *Knight,* 1 You. & Coll. 415 ; *Brown* v. *Haff,* 5 Paige, 241 ; *King* v. *Ruckman,* 6 C. E. Green, 599. In such a case, the plea of delay may be considered as urged only by way of pretence and evasion. *Doloret* v. *Rothschild,* 1 Sim. & St. 598.

Undoubtedly, as held upon argument of the demurrer to a previous bill filed by the complainants against the executrix of John D. Winston alone, a tender of the deed to Winston or his heirs was essential to any right of action. But the question whether the tender might not be dispensed with or excused upon a bill making the heirs of Winston parties defendant, and showing sufficient reasons, was expressly reserved. The present bill has been filed with a view to the opinion then delivered. The heirs are brought before the court, and a bill avers that a deed was executed and tendered to Winston " in a short time " after the contract was entered into ; and avers, also, that the delay of

the parties to demand and pursue their legal rights was occasioned by a suit commenced by third parties, after the sale, which involved the complainants' title, — the adverse claim being, however, known to Winston when he purchased, — which suit was decided in favor of the complainants in December after the death of Winston. These allegations, if established by the proof, would meet the objections raised to the complainants' right of action.

The evidence does show that, in the month of June after the contract was entered into, the complainants did cause a deed of conveyance to be drawn up in accordance with its tenor, together with four notes to be executed for the consideration agreed on, and delivered to Winston. It does not appear that the deed was executed by the complainants. What became of these papers nowhere appears. The deed not having been signed by complainants, its delivery to Winston did not amount to a compliance with the clause of the contract under consideration. What took place, however, evidenced a willingness on the part of the complainants to make the deed, and there is no proof that Winston ever demanded the deed, or offered to execute his notes. The allegation of the bill that a deed was executed and tendered in June, 1871, is, therefore, not sustained. The complainants must, consequently, rely upon the general principle that time is not usually of the essence of such a contract, and that the tender of the bill is sufficient.

The proof does establish the fact that, shortly after the contract was entered into, a suit was instituted in the Chancery Court of Grundy County by which the validity of the complainants' title was brought in question. It also shows that Winston was advised, before his purchase, of all the facts touching the adverse claim thus sought to be enforced. It also appears that this suit was finally decided by the Supreme Court in favor of the complainants' title, in the month of December after Winston's death. These facts do go far to explain the delay of both parties. Time,

it has been expressly held, will form no objection to the specific enforcement of a contract for the sale of land during the mutual forbearance of vendor and vendee on account of the embarrassment of the vendor's title. *Craig* v. *Leiper*, 2 Yerg. 193. And the knowledge by Winston of the existence of the ground of embarrassment deprives him of all right to complain of the delay incident to its satisfactory removal, as his possession was not disturbed, and the title of his vendors sustained. *McClure* v. *Harris*, 7 Heisk. 386; *Mullins* v. *Aiken*, 2 Heisk. 545.

It appears that in February, 1873, Winston evinced a strong inclination to be relieved from his contract, so far as it related to the purchase of the land, while conceding his liability to bear his share of the liability incurred by running the Springs during the two previous seasons. There is evidence to show that he had some conversation with complainant McLaughlin on the subject, and that the latter expressed a willingness to release him. It is in proof that Winston drew up an agreement, to be signed by McLaughlin, releasing him from the sum of $1,250, the one-half of the entire consideration, but without affecting his liability in the running of the Springs. He sent this instrument to McLaughlin to sign, who read it, and said he would get his attorney to draw up an instrument, sign, and send it to Winston. He gave as a reason for not signing the instrument handed to him, that it did not sufficiently bind Winston for his proportion of the indebtedness incurred for improvements made during the summer of 1871 by the firm of S. M. Scott & Co. It is obvious that McLaughlin was only willing to execute a release for the purchase-money of the land upon condition that Winston would pay for the personalty bought, and bear his proportion of the expenses incurred in 1871 in improvements made upon the realty, as well as his proportion of the liability incurred in running the Springs. The instrument written by Winston did not embody such an agreement, and it does not appear that the parties —

Winston and McLaughlin — ever came to an understanding touching the points of difference, either oral or written. In other words, no contract of release is shown to have been entered into. A rescission by parol may undoubtedly be made and enforced, but the evidence must be clear and the terms certain. *Walker* v. *Wheatley*, 2 Humph. 119, 124.

It also appears in proof that in February, 1873, Winston drew up a written notice to complainants, which was served upon Chadwell, to the effect that, as they had failed to give him a deed in accordance with their contract, he declined any longer to be considered a purchaser. There is no proof, however, that he returned to the complainants the possession of the property bought, either real or personal; nor did the notice fix any time for completing the title, which the court could see was reasonable. *Parkin* v. *Thorold*, 16 Beav. 71; *Wells* v. *Maxwell*, 32 Beav. 418; *Thompson* v. *Dulles*, 5 Rich. Eq. 370. His action had the effect, perhaps, of dispensing with a subsequent tender by the complainants of a deed before suit. *Gibson* v. *Patterson*, 1 Atk. 12. And the subsequent delay of the latter to bring suit, though they took a good deal of time about it, yet, to use Lord Loughborough's language in *The Marquis of Hertford* v. *Boore*, 5 Ves. 720, " one can easily imagine circumstances might have happened that would have made it peevish to have done it immediately;" for example, the ill health of Winston. His death was not, of course, such an event as, of itself, would affect the right to specific performance. So natural and so inevitable an occurrence must be presumed to have been in the contemplation of the parties in entering into the contract. The change of circumstances which will control the discretion of the court in the exercise of its jurisdiction must be something more than mortality's inevitable doom.

I am of opinion, under the circumstances, that time was not of the essence of the contract; that the delay in executing the deed of conveyance on the one hand, and

the purchase-notes on the other, is satisfactorily explained ; that the forbearance is shown to have been mutual; and that the tender made by the bill is sufficient to entitle the complainants to the relief sought.

This conclusion would have been reached upon the facts, even if the contract had embraced realty only. But the contract embraced both land and personal property, and a partnership was immediately formed by the owners of the entire property to use it in a particular way, which was done. This use required additions to the personalty, and improvements of the realty, which were made. The defendants are seeking to avoid the contract as to the realty only, without accounting for the personalty, or the profit or loss of the joint venture. It is impossible to place the parties *in statu quo*, and the contract must be allowed to stand as an entirety.