McKinney, J.,
delivered the opinion of the court.
This bill was brought to recover a slave named Hampton, in the possession of, and claimed by the defendant McKinney. The complainants found their right to said slave upon a deed of trust, alleged to have been executed on, the 20th of October, 1846, by the defendant Jackson C. Holland, to the complainant William Lally, for the indemnity of the complainant Martin Lally, against liability on account of certain outstanding debts remaining due from the partnership which had previously existed between the defendant Holland and said Martin Lally.
The deed of trust was executed at Holly Springs, in the State of Mississippi, where all the parties to the same at that time resided, and was there recorded pursuant to the law of Mississippi, on the day after its date. Said deed of trust, in the body thereof, purports to have been made by John 0. Holland, and is signed “J. C. Holland.” It purports to convey to said trustee, among other things, “one negro man named Hamilton.” The bill alleges, that by a mistake of the draftsman of said deed, Holland’s Christian name was written John *398 instead, of Jackson; and that by a like mistake, the name of of the slave was written Hamilton instead of Hampton, and avers that the defendant Jackson 0. Holland was the party who executed said deed, and that Hampton was the slave intended to be conveyed; and the truth of this averment is sufficiently made out in the evidence. The bill charges, that Holland failed to discharge the outstanding liabilities of said firm; that debts to the amount of $716 43, remain due to the firm creditors; and that all the effects of the partnership, and also all the property of defendant Holland conveyed in the deed of trust, except the slave Hampton, has been exhausted, leaving the foregoing amount unpaid. And the object of the bill is to subject said slave to the satisfaction of the claims of the creditors of the firm, who are joined as parties complainant in this cause; and to this end, it is sought to have the mistakes in the deed of trust rectified.
It appears that some considerable length of time prior to the execution of said deed of trust, the slave Hampton had been brought to Memphis, in this State, by the defendant Holland, and there placed in the possession of McKinney under a contract of bailment for hire. And that on the 17th of February, 1847, Holland mortgaged said slave to McKinney, to secure the sum of $700, money advanced on that day by the latter to the former, which was to be repaid in one year thereafter. It further appears that, the money not having been repaid, McKinney filed a bill in the chancery court at Memphis, to foreclose said mortgage; and by a decree of said court the slave Hampton was sold, and purchased by McKinney, on the 37th of November, 1849, at the price ol $885, out of which sum, the balance of the mortgage debt being $318 79, was satisfied, together with costs of suit, leaving a surplus of $533 53, which surplus was afterwards attached upon a bill filed by McKinney, for the satisfaction of other *399 debts which he held against the defendant Holland, and the money was applied accordingly by the decree of the court.
The defendant McKinney rests his defence chiefly upon the ground, that he is a bona fide purchaser of the slave Hampton, for a valuable consideration, without notice of the prior deed of trust; and there is nothing in the record to show actual notice to him of its existence.
By the statute of Mississippi, deeds of trust and mortgages of personal, as well as of real property, are required to'be recorded, and take effect and are valid, “as to all subsequent purchasers for valuable consideration without notice, and as to all creditors” — only from the time they are proved or acknowledged, and delivered to the clerk of the proper court to be recorded.
We understand it to have been conceded in argument here, that the deed of trust upon which the complainants found their right to recover the slave in controversy, is to have precisely the same legal effect and operation in the courts of this State, to which it would be entitled in Mississippi. And this upon the principle of general jurisprudence, that personal property is to be governed by the law of the owner’s domicil. And, subject to very few exceptions, a transfer of personal property, wherever situated, if valid according to the rule of the law of that country, will be held valid everywhere. Story’s Confl., §§ 380, 383, 384. It is no ground of objection to the validity, or operation of the deed of trust, that the slave was not locally within the State of Mississippi, at the time of its execution. An actual delivery of the slave was not necessary to complete the contract of sale, or to vest the right of property in the trustee. As observed by Judge Story, (2 Sumner’s Rep., 211,) there is no principle of law which establishes, that a sale of personal goods is invalid because they are not in the possession of the rightful owner at the time. The sale will not be invalidated, even by an adverse posses- *400 si-on, much loss by a possession suboi’dinate to the title of the owner. The sale is not under such circumstances, the sale of a mere right of action, but a sale of the thing itself, and good to pass the title against every person, not holding the same under a bona fide title, for a valuable consideration without notice. Ibid.
We proceed, then, to consider the general question presented for our determination, whether upon the facts of this case, the complainants are entitled to relief.
The parol evidence adduced, sufficiently establishes the mistakes in the deed of trust sought to be rectified. The first and principal question to be decided is, whether, as against the defendant McKinney, the complainants are entitled to have the deed reformed, and to have it enforced as varied and collected. It is well settled that a court of equity will grant relief in cases of mistake in written contracts, not only when the fact of the mistake is expressly established, but also -when it is fairly implied from the nature of the transaction. 2 Kent’s Com., 491; 1 Story’s Eq., § 162. But it is equally well established that a court of equity will interfere to re-foi’m mistakes in written instruments, only as between the original parties, or those claiming under them in priority; such as pei’sonal representatives, herns, devisees, legatees, assignees, voluntary grantees, or judgment creditoi’s, or purchasers with notice of the facts. As against bona fide purchasers for a valuable consideration without notice, courts of equity will grant no relief, because they have, at least, an equal equity to the protection of the court. 1 Stoi’y’sEq., § 165. In all cases of relief by correcting or aiding defects or mistakes in the execution of instruments and powers, the party seeking relief must stand upon some equity, superior to that of the party against whom he asks it. If the equities are equal, a court of equity is silent and passive. Ibid. §§ 176, 139. And the principle applies to every case, where an equi *401 ty is sought to be enforced against a bona fide, purchaser of the legal estate without notice; or even against a bona fide purchaser, not having the legal estate, where he has abetter right or title to call for the legal estate than the other party. Ibid., § 436.
But it is argued for the complainants, that the defendant cannot claim the protection afforded in equity to a bona fide purchaser without notice, because the registration of the deed in Mississippi, was constructive notice to him. The proposition assorted by the complainant’s counsel, that the registration in Mississippi is constructive notice, not only to all persons in that State, but to all the world, has not been controverted, and will not at present be discussed. Conceding it to be correct, it will be seen that the registration, under the circumstances of this case, cannot operate as constructive notice to any one. This doctrine of constructive notice, by mere presumption of law, arising from the operation of the registry acts, is to be taken with certain qualifications. It is very different in its effect from actual notice — actual notice binds the conscience of the party; constructive notice, by mere operation of the registry acts, may bind his title, but not his conscience. 2 Sch. & Lefr., 66; 1 Do., 137; 2 Johns., Ch. R., 191.
Again, registration is constructive notice in respect to snch instruments only, as are authorized and required by law to be registered, and are duly registered in compliance with law. 1 Story’s Eq., § 404. And, furthermore, registration is constructive notice only, of what appears on the face of the deed as registered. 2 Humph., 116; 1 Johns. Ch. R., 299. 'If the registration be not authorized or required by law; or if the registry itself be not in compliance with the requirements of the law; or if, upon the face of the deed as registered, the property purporting to be conveyed, be not truly and properly described, the act of registration is treated as a mere nullity *402 and, of course, cannot affect the subsequent purchaser with constructive notice. The object of registration is to give notice to creditors and subsequent purchasers. They have the right to presume that the instrument, as registered, speaks the truth, and expresses fully the true intentions of the parties. They cannot be expected or required to look beyond the face of the paper as it appears on the register’s books; nor can they be charged with notice of any thing beyond.
Applying these principles to the case under consideration, it is obvious, that the registration of the deed of trust in Mississippi is altogether a nullity. The names Hamilton and Hampton, whether regarded as Christian or surnames, are wholly different; and notwithstanding the partial similarity in sound, are as distinctive, in law and in fact, as any others however dissimilar in sound. A deed purporting to convey a slave named Hamilton, without any other description, would pass no title to the slave Hampton. Consequently, the legal title to the slave in question, still remaining in the defendant Holland, after the execution of the deed of trust, passed to, and became vested in, the other defendant, by virtue of the subsequent mortgage; and the latter having taken said mortgage as a security for money advanced at the time, without actual notice of the prior conveyance; and not being affected with constructive notice, by force of the registration thereof, he is placed upon the footing, and entitled to the protection of an innocent purchaser for a valuable consideration without notice; and standing upon this ground, we have seen that the complainants can have no relief against him. And admitting that, as against the other defendant, they are entitled to have the deed reformed, such decree could be of no possible avail. The deed, as corrected, must be registered, and by the express provision of the statute, would only take effect, as to creditors and subsequent purchasers, from the time it was registered as varied and reformed by thé decree; and of course *403 could have no retrospective operation, so as to overreach the mortgage to the defendant McKinney.
Secondly. It is pressed by the complainants’ counsel, that the defendant can claim to be protected as an innocent purchaser, no further, as against them, than to the extent of the balance due him upon the mortgage; and that as to the surplus fund of $533 53, the residue of the proceeds of the sale of the slave, attached by the defendant McKinney, as a creditor of Holland’s, they are entitled to a decree. And this would unquestionably be so, upon the general principle of equity jurisprudence before stated, aside from the different rule introduced by the registry act of Mississippi, as well as of this State, and most of the other American States. But, by the positive enactment of the statute of Mississippi, before referred to, registration is as indispensable, in order to give effect and validity to the instrument, as respects “all creditors,” as it is in respect to “all subsequent purchasers for valuable consideration without notice.” As to both classes of persons, the conveyance is a nullity till properly registered. Until then, the property remains in the conveyor, as to his creditors, and may be proceeded against, as such by them. And creditors have this vantage ground, which subsequent purchasers cannot occupy, that the former are not affected by actual notice of a prior conveyance, if unregistered, or not properly registered. It follows, therefore, that the complainants are repelled upon this ground, by precisely the same reason which repels them upon the other ground.
The decree of the chancellor will therefore be reversed, and the bill be dismissed'.