JAMES W. BRISTER, Appellant, v. ESTATE OF C. B.
BRUBAKER, and Heirs of C. B. BRUBAKER, De-
ceased, Appellees. —336 S. W. (2d) 326.

Western Section at Jackson.  January 27, 1960.

Certiorari Denied by Supreme Court June 6, 1960.

Strauch & Jones, Memphis, for appellant.

William W. Parish and W. J. Chiapella, Memphis, for appellees.

BEJACH, J.  This cause is before us on writ of error to the Chancery Court of Shelby County, Part I, pursuant to which James W. Brister undertakes to reverse a decree of said Chancery Court dismissing his suit for specific performance brought against the estate of C. B. Brubaker, deceased, and Virgil J. Bailey and W. J. Chiapella, co-administrators of said estate, and against Mrs. Ada Bailey, Mrs. Florence Buckley, Mr. H. J. Brubaker, and Mr. Oren E. Brubaker, heirs of C. B. Brubaker, deceased.  This suit was filed March 7, 1958.  C. B. Brubaker died intestate November 1, 1956, his death having resulted from an automobile accident on that date. Virgil J. Bailey, a resident of Dallas County, Texas, and W. J. Chiapella of Shelby County, Tennessee, were appointed co-administrators of his estate.  The parties will be referred to, as in the lower court, as complainant and defendants.  Complainant's suit seeks specific performance of a contract to convey a lot 58 feet by 135 feet on the east side of Highway 61 S., 216 feet north of Eastman

Road in Shelby County, Tennessee, which contract it was alleged was entered into August 18, 1955. The evidence of the contract consists of a check for $200 drawn by complainant, James W. Brister, on the Union Planters National Bank of Memphis, Tennessee, dated August 18, 1955, for $200, payable to C. B. Brubaker, on the face of which check is written:

"Deposit on Lot 58 by 135 located east side of Highway 61 S. 216 feet north of Eastman Road, Shelby County, Tenn. Bal. $65.00 per front ft. due $35.00 per month after $500.00 is paid at closing. Title guaranteed."

Said check was endorsed by C. B. Brubaker; and the proof is clear that he cashed same and received the proceeds thereof. Said check, with affidavits of L. C. Harris, Dudley Brister, Amos Bogan, Louise Brown, and Mrs. Josephine McKinnon attached, was filed for registration February 5, 1958, and same was recorded February 6, 1958 in Record Book 3943 at page 81, Registers Office of Shelby County, Tennessee.

The record shows that service was accepted for all defendants by Mr. Chiapella, as attorney. On behalf of all defendants, a demurrer was filed April 3, 1958, signed by W. J. Chiapella and William W. Paint, as solicitors for defendants. Said demurrer was overruled June 4, 1958 by Hon. Rives A. Manker, who at that time held the office of Chancellor of Part I, of the Chancery Court of Shelby County, Tenn. On the same date, June 4, 1958, pleas and answers of defendants were filed by W. J. Chiapella and William W. Parish, as solicitors for defendants. The pleas which precede the answer are, a plea of non est factum, signed and sworn to by W. J.

Chiapella, and a plea of the Statute of Frauds. The plea of non est factum denies the execution of the written instrument on which complainant's cause of action is founded, and the plea of the Statute of Frauds refers to section 23-201, T. C. A. The answer which accompanies said pleas admits the complainant issued the check for $200 payable to C. B. Brubaker, but denies that said check constitutes a contract or sale of land or for sale of property described in the bill, and alleges that said instrument is too vague, indefinite and uncertain to constitute a contract or sale of land, and in particular for sale of the real estate described in the bill. The answer denies that C. B. Brubaker did sign and cash said check, but admits that said check, described as said "article of writing" along with "affidavits to its execution" constituting the alleged "contract", was registered in the office of the Shelby County Register as alleged; but alleges that said "articles of writing, along with affidavits to its execution" were not authorized to or entitled to be recorded in the records of the Register of Shelby County, Tennessee, and that said recording is invalid and void. Said answer also sets up the defense of laches, consisting of the fact and circumstance that complainant took no action prior to the death of C. B. Brubaker, which occurred more than a year after the execution of said check, nor even after his death until about two years time had elapsed from the date of the check, and nearly one year after Brubaker's death. Said answer contains the following allegation, "Defendants on information and belief allege that said $200.00 as reflected by said alleged check was either never received by their decedent, C. B. Brubaker, or, if received, was returned to complainant by C. B. Brubaker or was returned to complainant by C.

B. Brubaker as liquidated damages or as rent due to C. B. Brubaker from complainant.''

By stipulation filed September 10, 1958, this cause was tried in the lower court on oral testimony, which testimony is preserved by bill of exceptions duly filed in the cause and made a part of the record.

Four witnesses testified for complainant and three for the defendant. Much of the testimony adduced was, in our opinion, immaterial to any issue involved in the law suit, and throws little light on the controversy. From this proof, however, it is clear that the check with the notations thereon, relied on by complainant as establishing a contract for the sale of the 58 foot lot here involved, was actually issued and delivered by complainant to C. B. Brubaker as claimed, that same was endorsed and cashed by C. B. Brubaker, and that the proceeds thereof were retained by him. It is not clear whether complainant took possession of the disputed land and used same, although there is some evidence to that effect. Neither is it clear whether or not complainant, during the lifetime of C. B. Brubaker, insisted on consummation of the deal for sale of the disputed land, although complainant testified that he made several demands for that purpose. One of the contentions of defendants is that, at most, the delivery and cashing of the check entitled complainant to an option for the purchase of the lot in question, which option was never exercised by him. This, we consider immaterial, because whether the transaction represented merely an option entitling complainant, James W. Brister, to purchase the lot on the terms specified on the check, or whether it evidenced an outright sale to him on said terms, he was, in either event, equally entitled

to have specific performance decreed to him in this suit as against C. B. Brubaker's estate, just as he would have been, as against C. B. Brubaker himself, during his lifetime.

The Chancellor held that the instrument relied on by complainant, viz., the check with its notations thereon and the endorsement of C. B. Brubaker, deceased, was too indefinite, incomplete, and uncertain to warrant a decree of specific performance. He held further that complainant's delay in seeking specific performance amounted to laches which disentitled him to a decree in his favor for specific performance. He did, however, grant, in favor of complainant, a decree for the $200 paid to C. B. Brubaker by the check in question, together with interest thereon at the rate of 6% per annum from August 18, 1955. In all other respects, complainant's bill was dismissed with prejudice.

Both complainant and defendants excepted to the Chancellor's decree and prayed appeals which were granted. Thirty days time was allowed, in the final decree, for filing appeal bonds or taking the pauper's oath in lieu thereof and otherwise perfecting the appeals. Said decree was entered October 20, 1958. Subsequently, additional orders were entered which extended the time for preparing and filing a bill of exceptions, and the bill of exceptions which preserved the oral testimony was duly filed within the time allowed by the Court's orders and within the time authorized by law; but, on account of illness of Mr. W. Robert Martin, who had represented complainant in the lower court, no appeal bond was filed on behalf of complainant within the thirty days time allowed by the final decree. Complainant's present counsel, however, filed the record in this Court within the

158

time allowed by law for issuance of a writ of error, and the cause is presented to us in that manner for review of the decree of the lower court. Defendants, on the other hand, neither perfected their appeal nor presented the record for review by writ of error.

In this Court, complainant has filed three assignments of error, which are as follows:

## "I.

"The court erred in holding as a matter of law that the memorandum involved in this case is too indefinite, incomplete, and uncertain to be specifically enforced.

## "II.

"The court erred in holding that the Complainant was not entitled to specific performance of the contract for the purchase and sale of the land involved.

## "III.

"The court erred in holding that Complainant was guilty of laches which would bar his being entitled to a decree of specific performance."

This cause being before us on writ of error, and the record filed being regular and complete, it will be disposed of by us just as if complainant's appeal had been perfected. Jackson v. Hutton, 15 Tenn. App. 281; Fletcher v. Russell, 27 Tenn. App. 44, 177 S. W. (2d) 854; Section 27-303, T. C. A. Also, the cause being before us under the provisions of section 27-303, T. C. A., it is before us with the presumption that the decree of the Chancellor is correct, unless the preponderance of the evidence is contrary to his decree.

■ 159

■ Under the provisions of sections 64-401 and 64-402, T. C. A., suit in the instant case was properly brought against the administrators of deceased, C. B. Brubaker, and also against his heirs, who have been held to be necessary parties in such suit. Hale v. Darter, 24 Tenn. 79. The provisions of said Code sections are as follows:

"64-401. Execution by personal representative of deceased vendor.—In all cases of written agreements or contracts for the conveyance of land in this state, where the person executing the same dies before final conveyance is made, his personal representatives may execute the conveyance to the person with whom such agreement or contract was made, his heirs or assigns, according to the forms prescribed for the conveyance of real estate.

"64-402. Registration of contract required.—The personal representative cannot be required to execute a conveyance under the provisions of sec. 64-401, unless the written agreement of contract, duly registered, or a certified copy thereof from the register's books, is produced and delivered to him."

■■ One of the contentions of defendants is that the contract relied on by complainant was not properly recorded and, consequently, that it may be treated as a nullity by the administrators of C. B. Brubaker, deceased. Section 64-2201, T. C. A. provides, with reference to "Methods of authentication", as follows: "To authenticate an instrument for registration, its execution shall be acknowledged by the maker, or proved by two (2) subscribing witnesses, at least." With the notation thereon and the endorsement of deceased, complainant's check was actually recorded, along with the several affidavits

referred to above. It has been held, however, that instruments improperly or incorrectly recorded constitute no constructive notice and may be ignored. Lally v. Holland, 31 Tenn. 396; Wilkins v. Reed, 156 Tenn. 321, 300 S. W. 588. Assuming that defendants are correct in their contention on this point, and that Virgil J. Bailey and W. J. Chiapella as administrators of the estate of C. B. Brubaker were not required, under the provisions of section 64-402, T. C. A. to execute a conveyance to complainant, because the contract relied on by complainant was not properly authenticated for registration, and was, therefore, improperly registered, this constitutes no defense to complainant's suit for specific performance. This is true for two reasons: First, because the provisions of section 64-402, T. C. A. are probably directory, as was held by the Supreme Court in Wilkins v. Reed, 156 Tenn. 321, 300 S. W. 588, with reference to certain provisions of the recording statutes, and: Second, because, under the provisions of section 64-2601, T. C. A., if the contract relied on by complainant is otherwise sufficient, it is binding, as between the parties to same and their heirs and representatives, without registration. It has been held that even though a personal representative was not required to execute a conveyance provided for in section 64-401, T. C. A., unless the contract relied on was recorded as provided for in section 64-402, T. C. A., nevertheless, a deed executed without such registration is good. Carter's Lessee v. Parrot, 1807, 1 Tenn. 237; Den ex dem. Haggard v. Mayfield, 1818, 6 Tenn. 121; Butterfield v. Miller, 6 Cir., 1912, 195 F. 200.

It becomes necessary for us then to determine whether the contract relied on by complainant, which is represented by the check for $200, dated August 18, 1955, in-

cluding the notation and endorsement thereon, is sufficient to comply with the provisions of the Statute of Frauds, as set out in section 23-201, T. C. A.

■ It has been held that, if a writing appears to refer to a particular tract of land and does not fit any other tract, parol evidence is admissible to locate and designate the tract intended. Kirshner v. Feigenbaum, 180 Tenn. 476, 176 S. W. (2d) 806; Dobson v. Litton, 45 Tenn. 616. But it is unnecessary to follow or rely on this line of decisions. In our opinion, the notation on the check is sufficient, without the introduction of parole evidence to supplement same, to cover both the description of the land to be conveyed and the terms on which same is to be conveyed. As to the identification of the property, itself, this must have been equally clear to Mr. W. J. Chiapella, one of the administrators of deceased's estate, and one of the defendants in this cause. From the record, at page 149, we quote as follows:

"The Court: Before we go any further, what is the lot number of the property before the court?

"Mr. Chiapella: It is the north 58 feet of lot 55 of Barton Heights subdivision."

■ The notation on the check describes the property as "lot 58 by 135 located on East side of Highway 61 S., 216 feet North of Eastman Road, Shelby County, Tenn." This description identifies a particular piece of land and designates its location. Without other or further information, a surveyor could locate and stake out this tract of land. That, in our opinion, is sufficient to comply with the requirements of the Statute of Frauds. As to terms of payment, the contract is equally clear.

It provides that $65 per front foot shall be paid at the rate of $35 per month after $500 is paid at closing. Sixty-five dollars per front foot for the 58 feet fronting on Highway 61 S. totals $3,770, which added to the $200 represented by the check itself, and $500 additional to be paid at the closing, makes the total price of the lot $4,470. This figures to be a little more than $77 per front foot, which is certainly not a grossly inadequate consideration. The Chancellor's opinion says, "That the fair market value of the land in question was $75.00 per front foot in 1955, and that it is worth $175.00 per front foot at the present time."

Change in value is not sufficient ground for denying specific performance. University of Tennessee v. Memphis Hospital College Building Company, 6 Tenn. App. 131; Smith's Heirs v. Christmas, 15 Tenn. 565; Rogers v. Roop, 19 Tenn. App. 579, 92 S. W. (2d) 423; 49 Am. Jur.—Specific Performance,—Sec. 64, p. 78.

With reference to the Chancellor's holding that laches on the part of complainant entitles defendants in the instant case to have complainant's bill dismissed, we think the delay in the instant case was not unreasonably long. Only a little more than a year's time had elapsed between the date of the contract and C. B. Brubaker's death, on November 1, 1956, and only a little more than two years thereafter, the present suit was filed. It appears, also, that a previous suit, which for some reason had been dismissed without prejudice, so as to permit the filing of the present suit, was filed August 1, 1957, which was less than a year after C. B. Brubaker's death. Besides, the determinative test as to laches, which may be available as a successful defense,

is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay. Bernard v. Walker, 186 Tenn. 617, 212 S. W. (2d) 600; Evans v. Steele, 125 Tenn. 483, 145 S. W. 162. In the instant case, we can see no prejudice that either has or might have resulted to defendants by reason of lapse of time, except, perhaps, the death of C. B. Brubaker, himself, which could not have been foreseen nor avoided, and which is insufficient, in any event, to prevent complainant from obtaining relief.

Another contention, which is urged in behalf of defendants in the instant case, is that specific performance is not a matter of absolute right, but is a matter addressed to the sound legal discretion of the court; for which proposition counsel for defendants cite Morrison v. Searight, 63 Tenn. 476, 481; Northcutt v. Massie, 201 Tenn. 638, 301 S. W. (2d) 355, 357; Parsons v. Hall, 184 Tenn. 363, 199 S. W. (2d) 99; Johnson v. Browder, 185 Tenn. 601, 207 S. W. (2d) 1, and Gibson's Suits in Chancery (5th Ed.), section 995. It is contended, of course, that the Chancellor did not abuse his discretion in the instant case.

On the other hand, counsel for complainant contends that, ordinarily, Equity will decree specific performance of a contract for sale of land, as a matter of course, in the absence of any valid objection, where the contract is valid; and for this proposition they cite: Pomeroy's Equity Jurisprudence, 5th Ed., vol. 4, p. 1034; Blair v. Snodgrass, 33 Tenn. 1; Radiophone Broadcasting Station v. Imboden, 183 Tenn. 215, 191 S. W. (2d) 535, and Richardson v. Bristol Land & Improvement Co., 1 Tenn. App. 671.

As applied to the facts of the instant case, we adopt the view of the complainant, rather than that of the defendants; and we hold that the learned Chancellor abused his discretion by refusing a decree of specific performance.

All of the appellant's assignments of error will be sustained, and the decree of the Chancellor will be reversed. A decree may be entered in this Court to that effect and providing that the cause be remanded to the Chancery Court of Shelby County, Tennessee for entry of a decree granting specific performance to complainant, James W. Brister, on the terms provided for in the notation on the check of James W. Brister to C. B. Brubaker, dated August 18, 1955, and otherwise in conformity with this opinion; and for enforcement of such decree, after it has been entered. One reason for ordering a remand for entry of the decree, rather than entering such decree in this Court and enforcing it here, is because of greater convenience in administering and enforcing such decree in the lower court. Another reason is that in the brief of appellees filed in this Court, the statement is made, "One of the heirs and defendants, Mrs. Ada Bailey, has also died since the hearing". Neither formal suggestion of such death nor application for revivor has been made in this Court; but, if such revivor against her estate should be necessary, that, also, may be handled with greater convenience in the lower court.

The costs, including those of the lower court, as well as those of the appeal, will be adjudged against the estate of C. B. Brubaker, deceased.

Avery, P. J., (W. S.), and Carney, J., concur.