Hubert O. SHUPTRINE and Phyllis W. Shuptrine, Petitioners,

v.

James G. QUINN and Patricia F. Quinn, Respondents.

Supreme Court of Tennessee.

Aug. 27, 1979.

Rehearing Denied Sept. 17, 1979.

Harry Berke, Berke, Berke, Berke, Chattanooga, for petitioners.

John T. Henniss, Grant & Clements, P. A., Chattanooga, for respondents.

## OPINION

COOPER, Justice.

Hubert O. Shuptrine and wife, Phyllis Shuptrine, brought an action against James

M. Quinn and wife, Patricia Quinn, to specifically enforce a contract for the sale of realty. In defense, the Quinns took the position the writing that was the subject of the action was not a completed contract and did not express the intent of the parties. The Quinns also alleged that if there was a contract, (1) the Shuptrines were either estopped or had waived their right to enforce the contract, (2) that specific performance of the contract would be harsh and inequitable, and (3) that the Shuptrines should be limited to a judgment for damages.

On trial, the chancellor found the material issues in favor of the Shuptrines and ordered the Quinns to specifically perform the contract.

The Court of Appeals concluded there was no showing the Shuptrines could not be made whole by an award of damages, reversed the decree of the chancellor, and remanded the cause for a determination of damages sustained by the Shuptrines as the result of the breach of contract by the Quinns.

We granted certiorari to review the action of the Court of Appeals. Respondents also filed assignments of error as they are permitted to do under Rule 13 of this court. Specifically, respondents insist "the Court of Appeals erred in affirming the chancery court's decision that [the Shuptrines] were estopped or had not waived the right to assert the writing as a contract representing the full intent of the parties and in affirming the chancery court's decision that there was a valid contract existing between the parties." Respondents also insist that "the Court of Appeals erred in not finding the Chancery Court had abused its discretion in awarding [the Shuptrines] specific performance because of the harsh and inequitable result with respect to the [Quinns]."

The writing that is the subject of this action was the culmination of extensive negotiations between the Shuptrines and the Quinns and was jointly written by them. It is as follows:

We, Patsy and Jim Quinn, agree to buy the Shuptrine house on Cumberland Road, Elder Mountain for $311,500. A 10% down payment will be given to the Shuptrines by January 30. Closing will be by Sept. 1, 1977, or no earlier than June 1, 1977. House will be vacated within 30 days of closing. All liens including the pool will be the responsibility of Hubert Shuptrine. The down payment is not refundable. Taxes will be pro-rated as of closing date. All landscaping, further improvements, and/or modification shall be the responsibilities of the future owners as of January 30, 1977.

We are buying the house in the condition as of 1/6/77. At closing the house will be in the same condition. There are no defects in the house or appliances as of this date.

The first paragraph of the instrument is in the handwriting of Mr. Quinn, while the second paragraph was written by Mr. Shuptrine. All parties signed the instrument on January 6, 1977. Subsequently, the parties met with counsel. At that meeting the Shuptrines orally agreed to let the Quinns assume a $100,000.00 indebtedness on the home for a one-year period, at which time the debt would be paid by the Quinns. A contract was drawn up by counsel for the Shuptrines which contained all the provisions of the above written agreement plus the provision for the assumption of the $100,000.00 indebtedness. The latter contract was never signed.

Thereafter, the Quinns placed their residence on the market, with an asking price of $250,000.00. The residence had a cost-basis of approximately $135,000.00. Within a few days, the Quinns received and rejected an offer of $169,000.00 for the property.

The down payment due on January 30, 1977, under the contract was not paid by the Quinns. When the Shuptrines insisted on payment, the Quinns refused to complete the purchase of the house. In justification, the Quinns insisted their agreement to buy the house was contingent upon their obtaining financing.

The Shuptrines brought this action for specific performance. The Quinns immediately withdrew their house from the market

and took no further steps toward completing the purchase of the Shuptrine house.

■ Specific performance of a contract to sell realty may be asserted by the seller of realty as against the buyer as well as by the buyer against the seller. *McClure, Ex'r v. Harris* et al., 54 Tenn. 379 (1872); *Rogers v. Roop*, 19 Tenn.App. 579, 92 S.W.2d 423 (1935). The remedy is not available to either party as a matter of right, but rests in the sound discretion of the chancellor under the facts appearing in the particular case. *Moss Tie Co. v. Hill*, 191 Tenn. 582, 235 S.W.2d 587 (1951). Where specific performance for the sale of realty is decreed, "the contract must be clear, definite, complete and free from any suspicion of fraud or unfairness." *Johnson v. Browder*, 185 Tenn. 601, 207 S.W.2d 1, 3 (1947).

If a contract has all the essentials of validity, and is certain in its terms, is based on an adequate and valuable consideration, is fair and just in all its provisions, is free from any fraud, misrepresentation, illegality, or mistake, is capable of being enforced without hardship to either party, and if compensation in damages for its breach would be inadequate, a bill will be maintained for its specific performance. Gibson's Suits in Chancery, 5th Ed., p. 237, Vol. 2.

■ In this case there was no claim of overreaching or fraud, and the parties agreed the property was worth the contract price. Further, the chancellor and the Court of Appeals found "that the hand written agreement constitutes a valid contract and expresses the intent of the parties," and that the sale of the house was not contingent upon the Quinns obtaining financing. The courts also found that specific performance of the contract by the Quinns would not be inequitable and would not cause the Quinns undue hardship. These concurrent findings of fact are binding on this court, since there is material evidence to support the findings. T.C.A. §§ 27–303, 27–113; *Davis v. Bank of Illinois*, 561 S.W.2d 144 (Tenn.1978).

The chancellor decreed specific performance. However, the Court of Appeals was of the opinion that "one overriding requirement for the equitable relief of specific performance of a contract, namely, the absence of an adequate remedy at law" had not been shown and that, consequently, the Shuptrines must be limited to the remedy of damages for breach of contract.

■ As pointed out in *Gilson v. Gillia*, 45 Tenn.App. 193, 321 S.W.2d 855 (1958), "where [the award of] damages is practicable, and would be adequate, the court, as a rule, will not compel specific performance but will leave the complainant to his remedies at law or will itself award damages." But, in cases where the contract sought to be specifically enforced relates to land, or an interest in land, more often than not, an award of damages is not an adequate remedy. *See Brister v. Brubaker*, 47 Tenn.App. 150, 336 S.W.2d 326 (1960); *Leeper v. Morelock*, 168 Tenn. 192, 76 S.W.2d 335 (1934); *Blair v. Snodgrass*, 33 Tenn. 1 (1853); *Wilhelm v. Denton*, 82 Mich.App. 453, 266 N.W.2d 845 (1978); 71 Am.Jur.2d, *Specific Performance*, § 112.

Before conveyance has been made by the vendor his remedy in damages is not an adequate one. He can not get judgment for the full price, because he still has the land. His damages are usually measured by the contract price less the value of the land retained; but the land is a commodity that has no established market value and the vendor may not be able to prove what his real harm will be. Even if he can make this proof, the land may not be immediately convertible into money, and he is deprived of the power to make new investments. Prior to getting a judgment, the existence of the contract, even though broken by the vendee operates as a clog on salability so that it may not be possible to find a purchaser at any fair price. In addition the fact that specific performance is available to the vendee is of some weight, because of the rule as to mutuality of remedy. *See* § 372(2). Restatement of Contracts, § 360, *Comment* (c). Of similar import, *see*, 71 Am.Jur.2d, *Specific Performance*, § 115.

The validity of the above statement is readily apparent on consideration of the facts of the instant case. Here, we have a unique house, built by an artist according to his taste. It is an expensive house, costing in excess of $325,000.00 to build. At the time the contract was made, one of the known reasons for the sale of the house to the Quinns was to permit Shuptrine to convert his investment in the house into cash to permit him to go to Europe to further his business interests. In order to make the conversion, Shuptrine was willing to, and did agree to take less than his actual investment in the house. Without specific performance of the contract, Shuptrine is left with the house and with the burden of finding another buyer in order to convert his investment. While searching for a buyer, he is deprived of the power to make new investments. The record further shows that the money market in the Chattanooga area is such that lending institutions will not make a loan of more than $125,000.00 toward the purchase of a dwelling. This limits greatly the number of prospective purchasers of a house costing in excess of $300,000.00, and obviously could have an adverse effect on the time it would take to find a buyer and on the price Shuptrine could get for the house. Under these circumstances, in our opinion, specific performance of the contract for the sale of the Shuptrine house is the only remedy that can insulate the Shuptrines from loss resulting from a breach of contract by the Quinns, and we see no abuse of discretion by the chancellor in decreeing specific performance.

The judgment of the Court of Appeals is reversed and the decree of the chancellor is affirmed. The cause is remanded to the chancery court for enforcement of its decree. Costs of the cause are adjudged against James G. Quinn and Patricia F. Quinn.

BROCK, C. J., and FONES, HENRY and HARBISON, JJ., concur.