Daniel M. LANE, M.D., Walter Hammert, CPA, and Samuel Patterson, M.D., Plaintiffs–Appellants,

v.

ASSOCIATED HOUSING DEVELOPERS, A Tennessee Limited Partnership, Defendant–Appellee.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 2, 1988.

Application for Permission to Appeal Denied by Supreme Court Dec. 5, 1988.

Henry C. Shelton, III, Memphis, for plaintiffs-appellants.

Henry L. Klein, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This is a suit for specific performance or in the alternative damages for breach of two real estate sales contracts between plaintiffs, Daniel M. Lane, Walter Hammert and Samuel Patterson (hereinafter Sellers), and defendant, Associated Housing Developers, a Tennessee limited partnership (hereinafter Buyer). Buyer filed a counter-complaint for a refund of the earnest money. The chancellor denied recovery to either party and Sellers have appealed, presenting three issues for review which we quote from their brief:

1. Whether the trial court erred in finding no breach of contract by the Defendant.

2. Whether the trial court erred in denying specific performance of the contract.

3. Whether the trial court erred in finding no damages resulting from the breach of a contract.

Buyer also presents for review the issue of whether the Chancellor erred in denying a return of the earnest money.

The real estate contracts in question are dated November 1, 1982, and cover contiguous properties in downtown Memphis. The contracts are on printed forms generally used in Memphis, and except for the purchase price and terms of payment for the respective properties, the contracts are identical. The contracts provide that the closing of each contract is contingent upon the closing of the other, that time is of the essence and that the closing shall take place on or before December 10, 1982. The contracts also provide:

> Settlement and payment of balance, if any, of cash payment shall be made upon presentation of a good and valid warranty deed with the usual covenants and conveying a good and merchantable title, after allowing fifteen days from completion of title search or the delivery of abstracts for examination of title. At the election of Purchaser, Seller agrees promptly to furnish, for examination only, either title search or adequate abstracts of title, taxes, and judgments, covering Property, or at Seller's option, a policy of title insurance by one of the title insurance companies with offices in Memphis for the amount of the above purchase price, insuring marketability of title and paid for by Seller. Adequate abstracts of title, taxes and judgments are those required by a title insurance company with an office in Memphis as

the basis for the issuance of a policy of title insurance. In the event of controversy regarding title, a title insurance policy covering Property, issued by any local title insurance company for the above purchase price, shall constitute and be accepted by Purchaser as conclusive evidence of good and merchantable title.

We will now consider the issues presented for review.

Issue 1. Whether the trial court erred in finding no breach of contract by the Defendant.

■ This issue is presented for review on the premise that the chancellor found that defendant did not breach the contract. We do not believe that is the case. Our construction of the chancellor's written findings is that he found that defendant breached the contract, but that plaintiffs failed to introduce competent evidence of damages. In any event, regardless of the construction placed on the chancellor's written findings, we find from a review of the record that the evidence preponderates in favor of a finding that the defendant breached the contract. The evidence established that both contractual parties agreed to a delay of the closing past the December 10, 1982 date. A dispute arose because the title search or abstract revealed a railroad easement on the property. The defendant contended that the presence of the easement rendered the title to the property unmerchantable, and that plaintiffs could not convey good and merchantable title as called for by the contracts. The proof is clear that Mid–South Title Company of Memphis was committed to issue its title insurance policy for the amount of the contract price to the Buyer, insuring against any loss because of the easement. However, the Buyer insisted that it was not obligated to close the transaction unless plaintiffs secured from the railroad a release or disclaimer of the easement.

As quoted above, the contract states:
In the event of controversy regarding title, a title insurance policy covering Property, issued by any local title insurance company for the above purchase price, shall constitute and be accepted by Purchaser as conclusive evidence of good and merchantable title.

In clear and unequivocal language, Buyer agreed that any controversy regarding title could be cured by a title insurance policy for the amount of the purchase price. Notwithstanding Buyer's agreement, it steadfastly refused to comply with the contractual provisions and insisted upon a release or disclaimer from the railroad. The evidence clearly establishes that the Buyer breached the contract.

Issue 2. Whether the trial court erred in denying specific performance of the contract.

In addition to its contention that it did not breach the contract, Buyer contends that Sellers are not entitled to specific performance because such a remedy is discretionary with the chancellor, and also that plaintiffs were guilty of laches.

*Gibson's Suits in Chancery* provides:
If a contract has all the essentials of validity, and is certain in its terms, is based on an adequate and valuable consideration, is fair and just in all its provisions, is free from any fraud, misrepresentation, illegality, or mistake, is capable of being enforced without hardship to either party, and if compensation in damages for its breach is impracticable, or would be inadequate, a complaint will be maintained for its specific performance. The broad ground of jurisdiction in such cases is the inadequacy, or impracticability, of damages to do complete justice to the injured party. Where damages are practicable, and would be adequate, the Court, as a rule, will not compel a specific performance, but will leave the plaintiff to his remedies at law, or will award damages. If the contract relates to real estate and is in writing, and the foregoing requirements are satisfied, specific performance will be decreed, for damages cannot adequately represent real estate.

H. Gibson, Gibson's Suits in Chancery § 402 (W. Inman 6th ed. 1982).

■ The buyer and the seller in a contract for the sale of real estate may assert an action for specific performance, although the remedy is not available to either party as a matter of right, but rests in the sound discretion of the court under the facts of each particular case. *Shuptrine v. Quinn,* 597 S.W.2d 728 (Tenn.1979). It is stated in American Jurisprudence (Second):

> The remedy by specific performance is deemed to be mutual as between vendor and vendee. It has sometimes been said, however, that equity compels specific performance in favor of the vendor, not on the ground of mutuality of remedy, but on the ground that compensation in damages, measured by the difference in price, as ascertained by the market value and by the contract, is not regarded as adequate indemnity for the nonfulfillment of the contract. According to other authorities, where parties make a mutual executory contract for the sale of real estate, equity regards the vendee as the beneficial owner of the premises, even though he has not paid the purchase price, and holds that the vendor has the right to enforce payment of the purchase money by a suit in equity against the vendee's equitable estate in the land, instead of by an ordinary action at law to recover the debt. To deny the right to specific performance and remit the plaintiff to an action at law for damages is to accord the choice of proceedings to the one who is in default, an option which fairly belongs to the other.

71 Am.Jur.2d *Specific Performance,* § 115 (1973).

In *New River Lumber Co. v. Tennessee Railway Co.* 136 Tenn. 661, 191 S.W. 334 (1916), the Court said:

> The remedy of specific performance of a contract is a discretionary one. By this is not meant that the judges can exercise arbitrary discretion in refusing the relief or granting it. It is a legal discretion, and is firmly established in our jurisprudence. It is necessary, when parties refuse to perform and when adequate remedy at law does not exist, to the fulfillment and completion of the contract of

the parties. It is given as a substitute for the legal remedy of compensation whenever the legal remedy is inadequate or impracticable.

*Id.* at 677, 191 S.W. at 338.

■ There is no claim by anyone that the contracts before us are tainted with any fraud or overreaching. In fact, the evidence establishes that they are fair, valid and legally binding contracts. The record demonstrates that Sellers, after Buyer's refusal to complete the transaction, took all reasonable means to sell the property for a fair price, even to the extent of holding a public auction. Despite these efforts, Sellers were unable to obtain a sale of the property for a price at or near the contract price herein. The property appears to be unique and its appeal lies only to those that might be interested in a rehabilitation and remodeling project, similar to that initially envisioned by Buyer. The demand for this property apparently ceased at some point after the execution of the contract. Without specific performance, the Sellers continue to carry the burden of trying to sell the property which they thought had sold by virtue of the legally binding contracts with the defendant. Furthermore, there was proof that an appraisal of the property shortly before the date of the sales contract establishes the value of the property at an amount greater than the contract price. This seriously impaired Sellers' ability to prove damages according to the generally accepted rule that the damages for breach of a real estate contract is the difference between the contract price and the value of the property on the date of the breach. However, it is clear in this case that the Sellers by contracting to sell the property for a price less than the appraised value recognized the uniqueness of the property and proposed to rid themselves of the burden of ownership. With the peculiar facts of this case, Sellers do not have an adequate remedy at law.

■ The record establishes that Sellers did not file the complaint in this case until approximately two years and nine months after the Buyer's breach of the contract.

Buyer contends that the Sellers were guilty of laches which should deny them specific performance.

In *Brister v. Brubaker's Estate*, 47 Tenn.App. 150, 336 S.W.2d 326 (1960), this Court, speaking through Judge Bejach, stated:

> [T]he determinative test as to laches, which may be available as a successful defense, is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay. *Bernard v. Walker*, 186 Tenn. 617, 212 S.W.2d 600; *Evans v. Steele*, 125 Tenn. 483, 145 S.W. 162.

*Id.* at 162–63, 336 S.W.2d at 332.

The record before us does not reflect evidence that the Buyer made any change of position or took any particular course of action to its detriment because of the Sellers' delay in filing the suit. From the record we can see no prejudice resulting to Buyer from this delay.

In *Brister*, the defendant contended that the Chancellor did not abuse his discretion in denying specific performance. Judge Bejach commented on this contention:

> On the other hand, counsel for complainant contends that, ordinarily, Equity will decree specific performance of a contract for sale of land, as a matter of course, in the absence of any valid objection, where the contract is valid; ... (citations omitted)
>
> As applied to the facts of the instant case, we adopt the view of the complainant, rather than that of the defendants; and we hold that the learned Chancellor abused his discretion by refusing a decree of specific performance.

*Id.* 336 S.W.2d at 332.

After reviewing the entire record in this case, we, as Judge Bejach in *Brister*, hold that as applied to the facts of the instant case, the learned chancellor abused his discretion by refusing to decree specific performance.

Issue 3. Whether the trial court erred in finding no damages resulting from the breach of a contract.

Although we have determined that Sellers should have specific performance of the contracts, we will briefly address this issue because Sellers insist that they are entitled to their alleged special damages in addition to specific performance.

In *Turner v. Benson*, 672 S.W.2d 752 (Tenn.1984), the Court, in dealing with a suit for damages for breach of contract stated:

> [The] general rule and proper measure of damages available to a vendor as against a breaching vendee in a real estate transaction is that the vendor is entitled to the difference between the contract price and the fair market value of the property at the time of the breach. 77 Am.Jur.2d *Vendor & Purchaser* § 489 (1975); 92 C.J.S. *Vendor & Purchaser* § 537 (1955); see also Annot., 52 A.L.R. 1511 (1928). In addition, however, the vendor may recover special damages, if any, that arise out of the breach of contract in order to compensate the vendor for any loss or injury actually sustained by reason of the vendee's breach. These special damages, though, must be within the reasonable contemplation of both parties, at the time the contract was made. *Illinois Central Railroad Co. v Johnson and Fleming*, 116 Tenn. 624, 94 S.W. 600 (1906); *Machine Company v. Compress Co.*, 105 Tenn. 187, 58 S.W. 270 (1900); *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854).

*Id.* at 754–55 (emphasis supplied).

Sellers sought to recover and introduced proof of expenditures for interest paid on various bank loans made subsequent to the breach for the purpose of paying off a withdrawing joint venturer, and for making repairs to the property. Evidence was also introduced concerning the realty taxes for the years 1983 through 1986 and various other items. Obviously, many of the items listed by plaintiffs could not have been within the contemplation of the parties at the time the contract was made; and the delay of the Sellers in bringing suit was the direct cause of the accrual of a large part of the damages claimed. In any event, since we have determined that the eq-

uitable relief of specific performance should have been granted, we do not find it necessary to sift through the record in an attempt to determine the legally allowable damages which were proven.

■ This court is authorized to grant the Sellers the relief to which it was entitled in the trial court. T.R.A.P. 36(a). The chancery court has discretion to adjust the equities of the parties in order to do complete justice between them. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270 (Tenn.App.1982). In *Inman*, the trial court granted specific performance, although plaintiff caused a long delay in bringing the suit to trial. Judge Nearn for the Court stated:

> Appellant has come into the Chancery Court seeking the extraordinary equitable remedy of specific performance. Having done so, he is subject to the equitable maxim that he who seeks equity must do equity. As Chancellor Gibson has put it, he must pay the price of the decree the Court gives him. *Gibson's Suits in Chancery* § 16 (6th ed. 1982). Accordingly, the Chancery Court may, in its discretion, "adjust the equities of complainant to the equities of defendant and thus do complete justice between the parties." *Franklin v. Jones*, (1946) 28 Tenn.App. 528, 191 S.W.2d 835.
>
> In considering the equities of the parties in this case, we also note the equitable maxim that equity aids the vigilant, not those who sleep on their rights. See, e.g., *Winter v. Allen*, (1933) 166 Tenn. 281, 62 S.W.2d 51. While the initial delay in performance of the contract was caused by the refusal of the estate to perform, the delay in bringing this lawsuit to trial must, on the record, be attributed to the appellant. The delay of seven years has resulted in a material difference in the particular contract term appellant seeks to enforce on this appeal.

*Id.* at 273. The court held that the chancellor properly exercised his discretion to withhold from specific performance parts of the contract in view of the delay and changed circumstances affecting the bargain contemplated by the parties.

■ In the case before us, the record reflects that the value of the properties at the time of trial was considerably less than the value represented by the contract price. The decrease in value is attributed at least in part to deterioration resulting from the passage of time. Perhaps it can be asserted that the decrease in value is also due in large part to the unique nature of the property involved. However, this court, after careful consideration, feels that in balancing the equities, the fair and just solution in view of all the circumstances is to grant specific performance of the contracts and to award plaintiffs one-half of the taxes and insurance premiums paid for the years 1983, 1984, 1985 and 1986.

Accordingly, the judgment of the trial court is vacated, plaintiffs are awarded one-half of the taxes and insurance premiums paid for the years 1983, 1984, 1985 and 1986, and defendant is ordered to specifically perform the contracts exhibited to the complaint with the following changes: closing will be as of July 1, 1987. The indebtedness to be assumed as stated in the contract has been paid, and the amount thereof will therefore be paid in cash at the time of closing. The deferred payments provided for in the contracts shall be for the same periods of time, but with proper adjustment of dates to conform with the date of closing. All prorations shall be as provided in the contract as of the new closing date.

Costs of the appeal are assessed against the appellants and this case is remanded to the trial court for such further proceedings as necessary to execute the order of this court.

HIGHERS and FARMER, JJ.