Morrison v. Searight.

ANDREW MORRISON v. GEO. SEARIGHT, and GEO. SEARIGHT v. ANDREW MORRISON.

1. CHANCERY JURISDICTION. *Specific performance.* Specific performance is not a matter of absolute right, but is within the sound legal discretion of the Court; and if the existence of the contract is doubtful, or for any reason it would be inequitable to grant the relief, it will be refused, and if the party be in fact entitled to any remedy, he will be left to prosecute it at law; accordingly, relief will not be granted to one claiming it, as the vendor in an alleged contract for the sale of land, the existence of the contract being in doubt, nor where it appears that subsequent to the proceedings, the title had been divested out of the complainant.

Authorities cited: Fry on Specific Performance, ₴165; Champion v. Brown, 6 Johnson C. R., 398.

2. SAME. *Damages.* A party whose debtor fails to pay according to contract, cannot charge the latter with damages incidentally resulting. The legal interest is, in such a case, the damage fixed by law.

FROM DAVIDSON.

Appeal from the Chancery Court. E. H. EAST, Chancellor.

GUILD, SMITH & GUILD for complainants.

W. F. COOPER for defendant.

MCFARLAND, J., delivered the opinion of the Court.

On the 10th of March, 1866, the complainant, Morrison, purchased a house and lot in Nashville, at a sale made under the decree of the Chancery Court, for $15,045. He executed his three notes, payable to the Clerk and Master for the amount of his bid. The sale was reported and confirmed. Subsequently, on the 27th of August, 1866, a contract in writing was entered into between Morrison and the defendant, Searight, by which the property was sold to Searight, upon terms therein set forth. Searight was to pay Morrison $650 in cash, and take up his notes from the Clerk and Master, and substitute his own notes for the same, and free Morrison from all liability on said notes, and look to the Court for a title, Morrison transferring his bid to Searight. Searight made notes payable to the Clerk and Master, similar in all respects to Morrison's notes, deposited them with the Clerk, and paid the cash payment. They joined in a petition to the Chancellor, to have the notes of Searight substituted for those of Morrison, and have Searight substituted as purchaser of the property. This application was refused by the Chancellor; the parties being left to execute their own contracts. There is conflict between the parties as to the course that was in fact adopted after this. Upon the part of

Morrison, it is insisted that the contract still remained in force, Searight still agreeing to take the property, and to pay Morrison's notes to the Clerk and Master, as they fell due. That the notes of Searight made payable to the Clerk and Master, but which were not allowed by the Court to be substituted, were, by the Clerk, assigned to Morrison, to be held by him, or by the Clerk for him, until the notes of Morrison were paid.

Upon the part of Searight, it is insisted, that, when the Court refused to permit the substitution, that both parties regarded the contract as at an end. That they subsequently undertook to make a new contract, by which Searight was to purchase directly from Morrison, and to execute to him notes for the payments to correspond with Morrison's notes to the Master, but this latter contract fell through, and the writings drawn up were never executed, because Morrison refused to accept the security offered by Searight upon his notes.

Morrison's first note to the Master fell due, and was not paid by Searight, and upon his refusal to pay, Morrison filed this bill to compel Searight to return his notes before referred to, (the possession of which he had obtained from the Master,) and to specifically execute the contract, by paying the money as agreed upon, or by taking up Morrison's notes, and taking the property.

The bill was answered, and proof taken, the principal question being as indicated, whether or not the

Morrison *v.* Searight.

contract had been abandoned by the parties. The cause was heard in June, 1868. The Chancellor refused a decree for specific performance, but referred the cause to the Master, to hear proof and report the damages Morrison had sustained by Searight's failure to execute the contract.

From this decree Morrison appealed to this Court, where the cause has been since pending. Subsequent to these proceedings, to-wit: on the 17th of March, 1872, Searight filed his bill, in which the previous case is referred to, and its history given, and in which he shows that, since the proceedings and appeal in that case, the property in question has been sold by a decree in the original case, in which Morrison purchased, to enforce the lien then retained for the payment of Morrison's notes for the purchase money; that the property has been purchased by another party, and the title is lost upon these facts. This bill assumes, that whatever may have been Morrison's rights to a specific execution under the first bill, he cannot now have it, because he is not now in a condition to make a title or execute the contract himself. This bill prayed for an injunction against the prosecution of the first bill.

Morrison admits, in his answer, that the land has been sold, as stated, but maintains that Searight is chargeable with this result and its consequences. Upon a hearing of this cause the decree was for Searight. Morrison has appealed, and the causes have been heard together in this court.

Upon the first case, it is certainly not clear that

the complainant was entitled to a decree for a specific performance. The contract was reduced. to writing, and signed by the parties, but it . contemplated that, after the cash payment, Searight was to be in all respects, substituted in the place of Morrison, as purchaser, under the decree of the Chancery Court. Searight's notes were to be substituted in the place of Morrison's, his name substituted as the purchaser, and he to look to the Court for a title. In short, Searight was, in all respects, to take the place of Morrison, as if the sale had been made to him in the first instance, and Morrison to have no further connection with the matter. This agreement was not, and could not be performed, because the Court refused to give its consent.

It would have certainly been competent for the parties, after this, to have so modified their contract as to make it an ordinary sale, Searight being bound to pay the amount agreed upon, either to Morrison, or upon his notes, and Morrison to make the title. This, however, would be materially different from the first arrangement. It appears in proof, that the parties undertook to make another contract. A paper was drawn up for Morrison to execute, which is called a title bond, but was, in reality, more in the form of a deed conveying the land to Searight, but reserving a lien for the payment of the notes which Searight agreed to pay to the Master. Notes were prepared and executed by Searight and securities, as part of this agreement, but Morrison refused to execute the bond or deed, or accept the notes, because the sureties on the

notes were not satisfactory. The parties then separated in a bad temper, and it does not appear that they had any further negotiation in regard to the matter. We are satisfied that this occurred after the refusal of the Chancery Court to permit Searight to be substituted as purchaser, under the first arrangement. In this view, to say the least of it, it is a matter of doubt whether any contract for the sale and purchase of the property remained in force between the parties after that time, and while the fact of the contract be in doubt, there can be no decree for specific performance. See Fry on Specific Performance, §165.

If the contract, in fact, existed, Searight being bound to take up Morrison's obligations and save him from harm, in consideration of the property, Morrison might probably maintain a bill for specific performance. See *Champion* v. *Brown,* 6 Johnson C. R., 398. But as we have said, if the fact of the existence of the contract be doubtful there can be no such decree. Specific performance is not a matter of absolute right, but a matter addressed to the sound legal discretion of the Court, and if, for any reason, it appears that it may be inequitable to grant the relief, it will be refused; and if the party be, in fact, entitled to any remedy, he will be left to prosecute it at law. We do not doubt that a contract was, in the first instance, duly executed, but it was contemplated that it should be performed in the manner above indicated, that is, that Searight was, in all respects, to take Morrison's

31—VOL. 4.

place as purchaser, under the orders and decrees of the Court, Morrison being released entirely. When this failed, from the refusal of the Court to give its assent, it is exceedingly doubtful, to say the least of it, whether the parties regarded the contract as any longer subsisting. It would certainly need to be modified, and to be consummated in a different mode; and when the parties attempted to do this, they failed to agree, and separated.

But aside from this, upon the facts brought out in the second case, it is clear there can now be no specific performance in the ordinary mode. Specific performance would be that Searight should pay the money and accept the land; or specific performance at the time of filing the bill might have been by taking up Morrison's notes from the Clerk and releasing him from liability; but this could only have been done by paying them, as the Court refused to permit a substitution. And, inasmuch as the land is now gone into the hands of another party, it is certainly clear that Searight cannot be required to pay for it, unless, indeed, as between him and Morrison, he was the equitable owner of the land in such a sense as, that, when it was sold to pay Morrison's purchase money, it was sold as his, Searight's property, he would then, of course, be liable for the deficit. This would have been the result if the first arrangement had been consummated, by which Searight was to be substituted as purchaser. And it is very probable that Morrison and Searight might have so stipulated, without the

assent of the Court, as between themselves, to make Searight primarily liable for the payment of the purchase money to the Master, and the equitable owner of the property, and, in such case, as between them, if the property be sold and Morrison be compelled to pay the deficit, he might look to Searight for indemnity; but, as we have said, we are not satisfied that such a contract as this, or, indeed, any contract, existed. If there was a contract by which Searight purchased the property from Morrison, and Morrison to convey upon payments being made to him or to his order, then, of course, this contract could not now be executed unless Morrison is in a condition to convey the property.

And, again, in this latter case, it may be that the loss of the property by a sale may have resulted from the failure of Searight to pay, according to contract, but this would not be legitimate ground for damages. A party, whose debtor, fails to pay according to contract, cannot charge the latter with damages incidentally resulting; the legal interest is, in such a case, the damage fixed by law.

Upon the whole, we conclude that Morrison is entitled to no relief. It is apparent, from what has been said, that he can have no account for damages.

The decree will be accordingly, but under the peculiar circumstances, the costs will be divided.