**Libbi D. McCULLOUGH, et al.**

v.

**Inez SILVERFIELD, et al.**

Court of Appeals of Tennessee, Eastern Section, at Nashville.

June 28, 2006 Session.

Sept. 11, 2006.

Permission to Appeal Denied by Supreme Court Jan. 29, 2007.

R. Eddie Davidson and Ben H. Cantrell, Nashville, Tennessee for the Appellants, Timothy Steve Smith and Al Ross.

Kenneth R. Jones, Jr. and William B. Hawkins, III, Nashville, Tennessee for the Appellees, Libbi D. McCullough, Jessee Lee Jones, and Honky Tonk, Inc. d/b/a Roberts Western World.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

## OPINION

Libbi D. McCullough, Jessee Lee Jones, and Honky Tonk, Inc. d/b/a Roberts Western World ("Plaintiffs") sued Inez Silverfield, Timothy Steve Smith, and Al Ross ("Defendants") claiming, in part, that Ms. Silverfield had breached a contractual right of first refusal when she sold real property located at 416 Broadway in Nashville, Tennessee ("416 Broadway") to Mr. Smith and Mr. Ross. Plaintiffs moved for summary judgment on the breach of contract claim. The Trial Court granted Plaintiffs' motion for partial summary judgment, ordered specific performance pursuant to the contractual right of first refusal, and granted Plaintiffs' motion for entry of a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Mr. Smith and Mr. Ross appeal. We affirm.

### *Background*

Plaintiffs purchased the business known as Roberts Western World located at 416 Broadway in Nashville, Tennessee from its prior owner, Robert Moore, in 1999. At that time, Mr. Moore had a lease with the owner of 416 Broadway, Ms. Silverfield. Initially after purchasing Roberts Western World, Ms. McCullough and her partner, Mr. Jones, paid rent to Mr. Moore who then paid Ms. Silverfield. After several months passed, Ms. McCullough and Ms. Silverfield developed a relationship, and Plaintiffs began paying rent directly to Ms. Silverfield.

In December of 2001, Ms. McCullough and Ms. Silverfield entered into a written lease on 416 Broadway and, at the same time, signed a document entitled Grant of Option and Right of First Refusal ("the Option"). In pertinent part, the Option provides:

1. *Right of First Refusal.* The Grantee shall have the right of first refusal on any sale of the Property, or an interest therein. Any offer received by Grantor from a third party to purchase the Property, or interest therein, which is acceptable to the Grantor shall be deemed to be an offer from the Grantor to Grantee to sell the Property upon such terms (a "Prospective Sale Notice"). Grantor shall notify the Grantee of the Prospective Sale Notice. The Grantee shall have sixty (60) days following receipt of the Prospective Sale Notice to accept the identical terms and conditions of the offer from the prospective purchaser, in which case the sale shall be closed within sixty (60) days thereafter unless such offer contains a later closing date. The Grantee's failure to provide written notification to the Grantor of intent to exercise the right of first refusal within said sixty (60) day period shall be deemed a waiver of such right as to such offer and the Grantor shall be free to sell the Property, or interest therein, to such prospective purchaser on the terms of the Prospective Sale Notice. If the Grantee waives the right of first refusal as to a given offer and the closing of the sale upon such terms to such prospective purchaser does not occur within one hundred fifty (150) days from the date of the Prospective Sale Notice, the Grantee's right of first refusal as to such offer shall be reinstated.

On July 15, 2003, Ms. Silverfield sold 416 Broadway and another parcel of real property, 421 Broadway in Nashville ("421 Broadway"), to Timothy Steve Smith, and Al Ross. Plaintiffs filed this lawsuit claiming, in part, that Ms. Silverfield had breached the Option by selling to Mr. Smith and Mr. Ross without giving notice to Ms. McCullough pursuant to the Option. Discovery commenced and in February of 2005, Plaintiffs filed a motion for summary judgment on the breach of contract claim.

Ms. McCullough testified at her deposition about the Option. She testified that Ms. Silverfield "very happily gave me right of first refusal because she had told me that that building was mine and whenever she was ready to sell it, it was going to me." Ms. McCullough testified that in late February or early March of 2003, Ms. Silverfield told Ms. McCullough she was interested in selling 416 Broadway. Ms. McCullough testified that she asked how much Ms. Silverfield wanted for 416 Broadway and Ms. Silverfield stated around $500,000. Based upon that conversation, Ms. McCullough prepared a written offer for 416 Broadway dated March 6, 2003, and submitted it to Ms. Silverfield's attorney, David Huff. Ms. McCullough received a rejection letter in response to her offer. Ms. McCullough then wrote Ms. Silverfield a letter "letting her know that I was surprised that I—she denied my offer, since it was at her initiation, and that I was disappointed that I did not receive a counteroffer." Ms. McCullough also hired a new attorney to communicate with Mr. Huff regarding the potential purchase of 416 Broadway and applied for financing with Bank of Nashville.

Ms. McCullough testified that "[416 Broadway] is irreplaceable, it is part of the whole concept of my business, and I will not be able to replace that property, no matter what kind of money I have. That property is unique, it's just invaluable to me." Ms. McCullough also filed two affidavits. Ms. McCullough's second affidavit filed on December 3, 2003, states, in pertinent part:

> Roberts Western World has been operated at 416 Broadway for many years. In order to be successful, I believe that it should be kept at that location. Monetary damages will not be adequate to compensate me or the other plaintiffs for the loss of 416 Broadway. I and the other plaintiffs will have been irreparably damaged unless this Court sets aside the sale and orders Ms. Silverfield to allow me the opportunity to purchase 416 Broadway under the same terms and conditions as she sold 416 Broadway to the defendants Smith and Ross. . . .

Ms. McCullough testified that she was aware that Ms. Silverfield had discussions with Mr. Smith and Mr. Ross in the spring of 2003, concerning selling 416 Broadway but was not aware of any negotiations. Ms. McCullough testified that she had a conversation with Mr. Huff around May of 2003, and Mr. Huff told her that Ms. Silverfield was having discussions with Mr. Smith and Mr. Ross, but that no formal offer had been made and that as soon as a formal offer was made, Mr. Huff would notify her to trigger her right of first refusal. Ms. McCullough testified that on July 24, 2003, she learned that 416 Broadway had been sold. She further testified that before late July of 2003, Ms. McCullough was unaware that 416 Broadway and 421 Broadway had been purchased for $1.2 million. She first learned the terms of the sale after she filed this lawsuit.

Ms. Silverfield testified in her deposition that Mr. Huff represented her from approximately 1998 or 1999 until 2003, in regard to her Broadway properties. When asked during her deposition about her understanding of a right of first refusal, Ms. Silverfield stated: "That my tenant would have the first right to purchase the property would it come available to be sold."

Ms. Silverfield testified that in February of 2003, she had lunch with Mr. Smith and Mr. Ross and they offered to buy 421 Broadway for $500,000, if Ms. Silverfield would sell them 416 Broadway for $700,000, for a total purchase price of $1.2 million. Ms. Silverfield testified that she accepted their offer that day. Ms. Silver-

field further testified that she did not tell Ms. McCullough about this offer. Ms. Silverfield testified she told Mr. Huff about the offer, and that she left it up to Mr. Huff to convey the offer to Ms. McCullough. Ms. Silverfield stated she "took it for granted that he had." Ms. Silverfield also testified that she informed Mr. Smith and Mr. Ross about the Option.

Ms. Silverfield testified that during the conversation she had with Ms. McCullough that resulted in Ms. McCullough's written offer, Ms. McCullough told Ms. Silverfield that she could not afford to pay over $500,000 for 416 Broadway, and that Ms. McCullough never asked how much Ms. Silverfield wanted for the property. Ms. McCullough disputes ever telling Ms. Silverfield that she could not afford to pay this amount. Ms. Silverfield also testified that during that conversation, they talked about 421 Broadway and Ms. McCullough stated that she did not want and could not afford to purchase 421 Broadway. Ms. Silverfield testified that after that conversation, she had no additional conversations with Ms. McCullough regarding the purchase of 416 Broadway. Ms. Silverfield testified that she refused Ms. McCullough's written offer because she had been offered more by Mr. Ross and Mr. Smith. Ms. Silverfield further testified that the sale to Mr. Ross and Mr. Smith was a package deal for both 416 Broadway and 421 Broadway. Ms. Silverfield testified that since Ms. McCullough told her she could not afford to pay what Mr. Ross and Mr. Smith had offered, Ms. Silverfield concluded that she did not have to offer Ms. McCullough the same deal.

Mr. Ross and Mr. Smith submitted a letter dated March 14, 2003, to Mr. Huff as Ms. Silverfield's attorney. This letter states, in pertinent part:

Steve Smith and Al Ross are making an offer to purchase the Properties known as:

**The Wheel Bar at 421 Broadway and Robert's Western World at 415(sic) Broadway**

PURCHASE PRICE: $1,200,000.00

TERMS OF PAYMENT: To be discussed with [Mr. Huff, Ms. Silverfield, and her son] before signing of purchase.

The sale of 416 Broadway and 421 Broadway to Mr. Smith and Mr. Ross was closed during a lunch meeting on July 15, 2003. Ms. Silverfield testified that she, her son, Mr. Smith, Mr. Ross, and Mr. Lyons, the attorney representing Mr. Smith and Mr. Ross, were present at the closing at Houston's restaurant. Mr. Huff was not at the closing. Ms. Silverfield admitted that Mr. Huff did not know that the closing was going to occur, but testified that he still was her lawyer then as she had not fired him. Ms. Silverfield testified that Mr. Smith and Mr. Ross came up with the payment terms for the deal. They paid her $147 in cash at the closing in July of 2003, and were to pay $300,000 in January, and no interest until January of 2005. Ms. Silverfield testified that she had discussed the terms with Mr. Smith and Mr. Ross months before the closing, but that she never offered these terms to Ms. McCullough. Ms. Silverfield stated: "Mr. Huff was supposed to have told her. I mean, written to her." Ms. Silverfield admitted that she does not know what she did, or what Mr. Huff did on her behalf, that fulfilled her obligations under the Option.

David Huff was deposed and asked, among other things, about the letter he received from Mr. Smith and Mr. Ross dated March 14, 2003. When asked if he would call this March 14, 2003, letter an offer, Mr. Huff stated:

I would call it a proposal and the reason I differentiate that with an offer is because another document, which I know we're going to talk about, is the option to purchase, which you're aware of. Within the context of that, no, I don't think it was an offer. I think it was a proposal. In terms of whether it met the definition of an offer of that option agreement, no, I don't think it did.

Mr. Huff further testified that it was not an offer "Because it doesn't specify what the terms of the purchase price would be or how it's going to be paid. In fact, it says just the opposite." Mr. Huff testified that when he received the proposal from Mr. Smith and Mr. Ross, he did not call or write Plaintiff to tell her that an offer within the terms of her option had been made and give her the sixty days to respond. He explained:

Because, again, I didn't think it was an offer that was specific enough to communicate to her.... Number two, since it contained a proposal in regard to a property in which she had no interest, I had—I felt at that time a confidentiality issue with my client. Number three, like I said earlier, since these were attempting to be combined and Ms. McCullough only had an option in regard to the one property, 416, I thought it—we had to be very careful about how we tried to work through this if, in fact, she decided she wanted to sell both of these to these gentlemen.

When asked if he ever received an offer with sufficiently definite terms that he felt obligated Ms. Silverfield to notify Ms. McCullough, Mr. Huff testified:

Not—no. Now, let me preface that by saying that I did get something in writing from Mr. Lyons that specified an amount as to each building. It did not have terms on it, however. Although I did go on and convey that verbally to

[Ms. McCullough's attorney], and told him, when I got the terms, then I would go ahead and fulfill the obligation under the option agreement.

When asked what happened between his receipt of the March 14, 2003 letter from Mr. Smith and Mr. Ross and July 15, 2003, when the sale closed, Mr. Huff testified: "There was a little activity, but the primary thing that I was trying to get accomplished was to get a proposal that, number one, had terms that I could convey to Mr. Small as Ms. McCullough's attorney,...."

Mr. Huff testified that he had no idea that there was going to be a closing at the restaurant on July 15, 2003. Mr. Huff testified that when he was told that they were meeting for lunch: "I presumed they were going to talk about trying to get, you know, an agreement that could be submitted.... To Ms. McCullough." When asked if he ever became aware that Ms. Silverfield wanted to accept the offer made by Mr. Smith and Mr. Ross, Mr. Huff stated:

Not as written, no. Now, like I said, she was definitely most interested in it. I will say, the reason I answer it in that fashion is, she did not really want a cash deal. That's indicated in my note here on 3/25. The reason being, she was getting a huge amount of cash on this other deal, and was having a big tax issue and was trying to avoid that. I was trying to help her avoid that as best I could. So, yeah, she was quite interested in doing a deal, but she was—and we were trying to work together to get it done in a way that was most beneficial to her and also in a way that would not—that would fulfill the obligation she had to Ms. McCullough, without Ms. McCullough feeling like or that somehow she had not been given a fair shot under the option agreement, because

otherwise that would have triggered a lawsuit.

A letter from Mr. Lyons to Mr. Huff dated June 13, 2003, two days prior to the closing, states, in pertinent part:

My clients, Steve Smith and Al Ross, individuals and principals in Longbranch, LLC, tendered an offer for [416 Broadway and 421 Broadway] on March 13, 2003 for $1.2 million. It has now been sixty days since that offer was made. I understand that the tenant has 60 days under her lease to tender a like offer. The 60 days has now expired. Please respond to the offer.

If there is an issue regarding both properties, and your client requires a separate offer for each property, we hereby tender the following formal purchase offer on the above-named properties.

1. The buyers will pay $700,000 for 415(sic) Broadway.

2. The buyers will pay $500,000 for 421 Broadway.

In addition, we will better any offer by the tenant made in writing.

At the closing on July 15, 2003, Ms. Silverfield, Mr. Smith, and Mr. Ross executed a document entitled Real Estate Sales Contract and Note that, in pertinent part, provides:

Whereas, Timothy Steve Smith and Al Ross desire to purchase real property at 416 Broadway and 421 Broadway, Nashville, TN 37203, and:

Whereas, the owner, Inez Silverfield, desires to sell and convey certain real property located at 416 and 421 Broadway, Nashville, TN 37203 to the buyers Timothy Steve Smith and Al Ross, and to take a note from the buyers. Now therefore, upon the mutual promises and considerations herein acknowledged, the parties hereby contract and agree as follows:

* * *

2. PURCHASE PRICE/TERMS: The purchase price of the two parcels of property shall be one million, two hundred thousand dollars ($1,200,000). The note shall carry interest at the rate of 6.58 percent per year and shall be paid. The terms of the purchase price and note are as follows;

The buyers shall pay earnest money of $147.00, receipt acknowledged.

On January 2, 2004, the buyers shall pay to the sellers the sum of $300,000[.]

On January 2, 2005, the buyers shall pay the seller the sum of $300,000, plus accumulated interest of $59,220 for a total payment of $359,220.

On January 2, 2006, the buyers shall pay the seller the sum of $300,000, plus accumulated interest of $39,480, for a total of $339,480.

On January 2, 2007, the buyers shall pay the sum of $300,000, plus accumulated interest of $19,740.00, for a total of $319,740, plus an additional $144.27.

The total principal payment is $1,200,000. The total interest payment is $118,584.27. The total principal and interest payment is $1,318,584.27.

* * *

6. OPTION. During the period of this contract, and so long as the payments are made timely by the buyers and the buyers are not in material breach of this contract, the seller agrees that the buyer shall have sole and exclusive right to purchase the following property during the term of this contract:

423 Broadway, Nashville, TN 37203

The seller assigns to the buyer the exclusive right to purchase the property at

issue during the period of this contract, to the benefit of the buyer and no other. The seller shall not show, convey, pledge, secure, bargain, or attempt to sell or convey the property at issue to any other person, party or entity, during the four year period of the note, so long as the buyer is not in material breach of this contract.

The Trial Court entered an order December 8, 2003, *inter alia,* requiring Ms. Silverfield to mail to Ms. McCullough a Prospective Sale Notice on or before December 12, 2003, so as to give Ms. McCullough notice consistent with the Option of the offer made by Mr. Smith and Mr. Ross for 416 Broadway and 421 Broadway.

On April 13, 2005, the Trial Court entered its Memorandum and Order granting Plaintiffs partial summary judgment and finding and holding, *inter alia:*

The Court concludes that there are no genuine issues of material fact that defendant Silverfield breached by failing to present the offer of defendant Smith and Ross to purchase the property to plaintiff McCullough as required by the Option and Right of First Refusal. Defendants' waiver or estoppel is not a bar to partial summary judgment because the undisputed facts the defendants cite to in support of their waiver or estoppel defense are insufficient as a matter of law to establish those defenses. The Court further concludes that the plaintiffs have demonstrated there is no genuine issue of material fact that the property is unique and that the plaintiffs have tendered performance such that the remedy of specific performance by way of summary judgment is appropriate. The facts which the Court finds are undisputed and relies upon and the law on which the Court bases its ruling are as follows.

\* \* \*

[T]here is no genuine issue of material fact that before Ms. Silverfield signed the deed and completed the conveyance, no one notified plaintiff McCullough of the terms that were included in the contract that defendant Silverfield signed at that time, nor did anyone offer the plaintiff the opportunity to purchase the Premises on those terms.

\* \* \*

In the face of these established facts, the defendants assert the defense of waiver or estoppel. The defendants cite to deposition testimony of conversations between plaintiff McCullough and Ms. Silverfield and her son to support their defense. These deposition excerpts can be boiled down to: statements made by plaintiff McCullough prior to and then subsequent to the July 15, 2003, sale of the Premises. The deposition testimony from Ms. Silverfield and her son is that plaintiff McCullough, prior to July 15, 2003, stated she could not afford to pay the dollar amounts being discussed by defendants Ross and Smith and did not want to join the sale of the Premises with the 421 Broadway property. The conduct by plaintiff McCullough subsequent to the July 15, 2003 sale is primarily her deposition testimony of November of 2003 that she did not intend to purchase the 421 Broadway property. These statements, the defendants assert, raise a jury issue on the defense of waiver or estoppel.

Starting with the deposition testimony of events prior to July 15, 2003, the Court has studied the deposition excerpts of defendant Silverfield, her son, defendant's (sic) Silverfield's attorney David Huff, and plaintiff McCullough, cited in defendant Silverfield's opposition to summary judgment. Those excerpts reveal that while there were dis-

cussions between plaintiff McCullough and defendant Silverfield about defendants Ross and Smith wanting to purchase the Premises and 421 Broadway and the dollar figures presented by defendants Ross and Smith, the deposition testimony is debatable as to whether defendants Ross and Smith had made a concrete offer to purchase prior to July 15, 2003.

What is certain from the deposition testimony, though, is that the information provided to plaintiff McCullough and her attorney by defendant Silverfield, her son and attorney Huff, was too vague to constitute a "known right" for the plaintiff to either waive or was too vague for the plaintiff to take inconsistent action on which an estoppel could be based. The conversations between plaintiff McCullough and defendant Silverfield, her son and attorney Huff, described in the depositions, do not meet the criterion of the contract provision establishing the Option and Right of First Refusal because those conversations did not provide plaintiff McCullough with the precise terms and conditions of an offer to purchase. Remember the Right of First Refusal requires defendant Silverfield to provide plaintiff McCullough with a "Prospective Sale Notice" for the purpose of plaintiff McCullough being able to decide whether to accept "the identical terms and conditions of the offer." The totality of the deposition testimony does not establish facts that plaintiff McCullough, in all these numerous conversations, was provided the terms and conditions of the Ross and Smith offer for plaintiff McCullough to be in a position to waive or be estopped from asserting the Option and Right of First Refusal.

* * *

The Court, therefore, concludes that the undisputed material facts establish that prior to July 15, 2003, insufficient information of an offer was provided to plaintiff McCullough such that there could be no waiver or estoppel. On July 15, 2003, defendant Silverfield breached the Option and Right of First Refusal by selling the Premises.

* * *

The remedy for that breach, the Court concludes, is specific performance. The record is replete with undisputed facts of the uniqueness of the Premises. Also, the summary judgment record establishes that there are no genuine issues of material fact that the plaintiffs are ready, willing and able to perform the Option such that they have satisfied the requirement of a "tender" to qualify for specific performance. Partial summary judgment granting specific performance is, therefore, appropriate.

The Trial Court entered an order June 22, 2005, *inter alia*, granting Plaintiffs' motion for entry of a final order on Plaintiffs' claims against Ms. Silverfield. All parties to this suit filed motions to alter or amend the order granting partial summary judgment on the breach of contract claim. The Trial Court entered an order August 2, 2005, *inter alia*, granting Plaintiffs' motion to alter or amend "to include additional terms necessary to ensure that plaintiffs receive clear title to all three tracts from defendant Silverfield" and directing that the Trial Court's April 13, 2005 order and June 22, 2005 order "as amended by this order be entered collectively as a final judgment resolving plaintiffs' claims against defendant Silverfield and prescribing the terms upon which plaintiffs are entitled to purchase 416, 421, and 423 Broadway in Nashville, Tennessee from defendant Silverfield free and clear of liens and encumbrances[.]"

Mr. Smith and Mr. Ross appeal to this Court. Ms. Silverfield did not appeal the grant of partial summary judgment.

### Discussion

Although not stated exactly as such, Mr. Smith and Mr. Ross raise two issues on appeal: 1) whether the Trial Court erred in holding that Ms. McCullough did not waive her rights under the Option, and, 2) whether the Trial Court abused its discretion in awarding Ms. McCullough specific performance.

In *Blair v. West Town Mall,* our Supreme Court reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall,* 130 S.W.3d 761 (Tenn.2004). In *Blair,* the Court stated:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples,* 15 S.W.3d at 88.

\* \* \*

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair,* 130 S.W.3d at 763, 767 (quoting *Staples,* 15 S.W.3d at 88–89) (citations omitted)).

Our Supreme Court has also provided instruction regarding assessing the evidence when dealing with a motion for summary judgment stating:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.

1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn.2000).

■ We first address whether the Trial Court erred in holding that Ms. McCullough did not waive her rights under the Option. We begin by noting that although Mr. Smith and Mr. Ross argue that Ms. McCullough waived her rights under the Option by telling Ms. Silverfield that she could not afford to pay more than $500,000, and by testifying during her deposition that she was not interested in purchasing 421 Broadway, the record is devoid of evidence that shows that Ms. McCullough waived her right to receive notice of any offer pursuant to the Option, including Mr. Smith's and Mr. Ross' offer as accepted by Ms. Silverfield on July 15, 2003.

Mr. Smith and Mr. Ross argue, in part, that Ms. McCullough knew that Mr. Smith and Mr. Ross were negotiating with Ms. Silverfield and was informed that there was talk about a purchase price of $1.2 million and, therefore, Ms. McCullough was notified of the deal. This argument completely ignores the fact that Ms. McCullough was entitled under the Option to receive notice from Ms. Silverfield about any offer, including the specific terms of the offer, and that Ms. Silverfield and her attorney, Mr. Huff, both testified that neither of them ever notified Ms. McCullough about any offer. Mr. Huff testified that he specifically told Ms. McCullough's attorney that he had received the letter from Mr. Smith and Mr. Ross with a proposed purchase price, but no terms, "and told [Ms. McCullough's attorney], when I got the terms, then I would go ahead and fulfill the obligation under the option agreement." Thus, neither Ms. McCullough nor her attorney ever were notified of the terms of an offer, and, in fact, were noti-fied that no offer existed that would trigger Ms. Silverfield's obligation to notify Ms. McCullough and Ms. McCullough's sixty days to respond under the Option.

Mr. Smith and Mr. Ross also argue that once Ms. McCullough learned of the terms of the deal during this litigation when Mr. Smith and Mr. Ross filed their answer to the complaint and attached the relevant documents, Ms. McCullough still failed to give written notice of her intent to exercise the Option within sixty days of learning the terms. This argument is without merit as under the Option, Ms. McCullough's sixty day window in which to exercise the Option was triggered by notice given by Ms. Silverfield. The Option specifically provides: "Grantor shall notify the Grantee of the Prospective Sale Notice." The fact that Ms. McCullough may have learned of the terms of the sale from someone else does not, under the clear and unambiguous terms of the Option, trigger her sixty day window in which to exercise the Option. Ms. McCullough was entitled to receive notice from Ms. Silverfield under the Option and did not until the Trial Court ordered it. In addition, it is irrelevant that people other than Ms. Silverfield or her attorney may have mentioned to Ms. McCullough that Ms. Silverfield was negotiating with Mr. Smith and Mr. Ross as Ms. McCullough never was given notice of the terms of the deal pursuant to the Option until the Trial Court ordered it to be done.

The record shows that Ms. McCullough was not given notice pursuant to the Option of the terms of the offer made by Mr. Smith and Mr. Ross until the Trial Court ordered Ms. Silverfield to give such notice during the pendency of this lawsuit. Ms. Silverfield was required under the Option to give Ms. McCullough notice of any offer acceptable to Ms. Silverfield in order to give Ms. McCullough the opportunity to

"accept the identical terms and conditions of the offer from the prospective purchaser...." Both Ms. Silverfield and her attorney admit that they never gave Ms. McCullough such notice. There is no genuine issue with regard to the fact that Ms. McCullough never waived her right to receive notice of any offer under the Option, or the fact that neither Ms. Silverfield nor her attorney gave Ms. McCullough such notice. Ms. Silverfield clearly was in breach of the Option. Given this, Ms. McCullough was entitled to summary judgment on the breach of contract claim. We affirm the grant of partial summary judgment.

We next address whether the Trial Court abused its discretion in awarding Plaintiff specific performance. As this Court explained in *McGaugh v. Galbreath:*

> The remedy of specific performance rests within the sound discretion of the trial court and upon the particular facts of each case. *Shuptrine v. Quinn,* 597 S.W.2d 728, 730 (Tenn.1979). "[S]pecific performance is regarded as appropriate when dealing with contracts for the conveyance of real property because real property is unique, and more often than not, an award of damages is simply not an adequate remedy." *GRW Enterprises, Inc. v. Davis,* 797 S.W.2d 606, 614 (Tenn.Ct.App.1990).

*McGaugh v. Galbreath,* 996 S.W.2d 186, 191 (Tenn.Ct.App.1998) (quoting *GRW Enters., Inc. v. Davis,* 797 S.W.2d 606, 614 (Tenn.Ct.App.1990)).

Mr. Smith and Mr. Ross cite to *Morrison v. Searight* a case from 1874, to support their argument that: "A court of equity will ordinarily not decree specific performance when the title to the property has passed to a third party." *Morrison v. Searight,* 63 Tenn. 476 (1874). We note that the decision in *Morrison* hinged upon the fact that the *Morrison* Court held that no contract existed such as would entitle either party to specific performance. *Id.* In addition, we note that in *Morrison,* it was the seller who was seeking to have the buyer ordered to specifically perform and pay for the property. *Id.* The *Morrison* Court held that since the seller had sold the property to a third-party and no longer was "in a condition to convey the property," he was not entitled to a decree of specific performance. *Id.* at 483. The facts and the holding in *Morrison* do not support a blanket assertion that "[a] court of equity will ordinarily not decree specific performance when the title to the property has passed to a third party." Further, the facts in *Morrison* are wholly different from the facts in the case now before us where a valid contract exists, the "third party" knew of the option, and the buyer is the one seeking specific performance regarding a unique parcel of real property. This argument is without merit.

Mr. Smith and Mr. Ross also argue, in part, that the Trial Court abused its discretion because they spent money on renovations and property taxes on the properties at issue and Ms. McCullough now will receive the benefit of those improvements without having to pay for them. Mr. Smith and Mr. Ross also argue that the Trial Court abused it discretion because it made no order regarding the return of the monies that Mr. Smith and Mr. Ross paid to Ms. Silverfield for the properties at issue. They argue that the Trial Court abused its discretion because it did not make "any provision for the damage suffered by [Mr. Smith and Mr. Ross]." We note, however, that the appeal before us involves only the Trial Court's grant of a partial summary judgment on the claim of breach of contract and the remedy of specific performance to cure the breach. These additional claims and issues raised

by Mr. Smith and Mr. Ross have not yet been decided by the Trial Court and are not before us for review at this time. We, therefore, will not address these issues.

We affirm the Trial Court's judgment in its entirety.

### *Conclusion*

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Timothy Steve Smith, and Al Ross, and their surety.